Stacy **BUTLER**; Darryl Bradshaw, an individual; Clifton Cunningham, an individual; Edric Jordan, an individual; Kevin Tandard, an individual; Kyle Winters, an individual, Plaintiffs–Appellees,

v.

**SAN DIEGO DISTRICT ATTORNEY'S OFFICE**, a municipal sub-agency of the County of San Diego, Defendant,

and

Edward Cervantes, an individual, Defendant–Appellant.

Stacy Butler; Darryl Bradshaw, an individual; Clifton Cunningham, an individual; Edric Jordan, an individual; Kevin Standard, an individual; Kyle Winters, an individual, Plaintiffs–Appellees,

v.

San Diego District Attorney's Office, a municipal sub-agency of the County of San Diego; Edward Cervantes, an individual; City of San Diego; San Diego Police Department; Jim Kelly, an individual, Defendants,

and

Keith Burt, an individual, Defendant–Appellant.

No. 02–57049.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 2, 2003.

Filed June 4, 2004.

Eugene G. Iredale, Douglas S. Gilliland, San Diego, CA, for the appellees.

John W. Wood, Wood & Wood, La Jolla, CA, for Appellant Edward Cervantes.

Morris G. Hill, Office of the County Counsel, San Diego, California, for Appellant Keith Burt.

Before: PREGERSON, COWEN,* and W. FLETCHER, Circuit Judges.

WILLIAM A. FLETCHER, Circuit Judge:

Plaintiffs are six black men who were tried in California state court for the felony-murder of a police officer who had been shot and killed while chasing a fleeing suspect through a San Diego park in 1988. Defendants-appellants are the prosecutor in the case, San Diego Deputy District Attorney Keith Burt, and his investigator, District Attorney Investigator Edward Cervantes. The trial took place in 1993–94. The star witness at trial was the then-

---

* The Honorable Robert E. Cowen, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

incarcerated Darin Palmer, who had agreed to cooperate with the prosecution. Four of the six plaintiffs were found guilty, one pleaded guilty to a lesser charge, and one was acquitted. The five convicted defendants were sentenced to long prison terms.

In 1997, an article in the *San Diego Union–Tribune* described favors provided by Burt and Cervantes to Palmer while he was a cooperating witness against plaintiffs. Among other things, the *Union–Tribune* article stated that Burt and Cervantes repeatedly transferred Palmer from prison to the San Diego District Attorney's office for sexual trysts with his wife and other women. The *Union–Tribune* ran photographs of Palmer and his wife having sex in a place clearly recognizable as the interior of the District Attorney's office. The special favors granted to Palmer, the star witness, were not disclosed to plaintiffs, to the judge at their criminal trial, or to the jury at that trial.

After publication of the article in the *Union–Tribune,* the five convicted defendants filed habeas corpus petitions in California state court. The state court granted the petitions and vacated the convictions. Prior to the scheduled trial, the trial judge disqualified the San Diego District Attorney in favor of the California Attorney General. After reviewing the file, the Attorney General offered a plea bargain. The convicted defendants agreed to the plea bargain, pleaded guilty to voluntary manslaughter, received time served (which was by this time several years), and were immediately released.

Plaintiffs—the five convicted defendants and one acquitted defendant—then brought this § 1983 action against, *inter alia,* Burt and Cervantes. Following discovery, Burt and Cervantes moved separately for summary judgment based on absolute immunity. Their motions were granted in part and denied in part. Burt and Cervantes appeal that part of the district court's order denying summary judgment.

We hold that the district court applied an incorrect evidentiary standard in denying summary judgment. It incorrectly understood the law to require it to assume that factual allegations in a plaintiff's § 1983 complaint are true when a defendant moves for summary judgment based on official immunity. Based on that understanding of the law, the district court did not rule on the admissibility of evidence proffered by plaintiffs at summary judgment, but rather simply assumed that the factual allegations in the complaint were true without regard to whether they had evidentiary support.

The district court was misled by a brief (and incorrect) statement by this court in *Fletcher v. Kalina,* 93 F.3d 653, 654 (9th Cir.1996), and a repetition of that statement by the Supreme Court on review of our decision in *Kalina v. Fletcher,* 522 U.S. 118, 122, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997). We hold that these brief statements were inadvertent and erroneous statements of the law. A correct statement of the law is that when a defendant makes a properly supported motion for summary judgment based on official immunity, the plaintiff has an obligation to produce evidence of his or her own. In such a case, the district court is not required (or even allowed) simply to assume the truth of challenged factual allegations in the complaint. In other words, a motion for summary judgment based on official immunity is governed by Federal Rule of Civil Procedure 56, just like all motions for summary judgment in civil suits in federal district court.

We vacate the portion of the district court's order from which defendants have

appealed and remand for further proceedings.

## I. Background

The following narrative is drawn from the plaintiffs' first amended complaint. The complaint is largely based on the findings of the state court habeas referee after extensive evidentiary hearings, but because the factual accuracy of the complaint has not been tested in the district court, we express no view here as to its accuracy.

According to the complaint, shortly after midnight on January 9, 1988, two San Diego Police Department ("SDPD") officers chased a black man in a green jacket through Lincoln Park in southeastern San Diego. While in pursuit, Officer Jerry Hartless was shot and killed. His partner called for backup, and more than one hundred SDPD officers responded. Officer Hartless's partner yelled to his fellow officers, "Get the guy with the green jacket." A number of the officers went to a nearby house (the "La Paz" house), known to be a gathering place for black neighborhood youths. The officers found a black man with a green jacket at the La Paz house. That man, Willie Godine, turned out to be the brother of veteran SDPD Detective Jim Kelly. SDPD officers telephoned Detective Kelly, woke him up, and told him to meet Godine at their mother's house.

Another black man at the La Paz house was plaintiff Stacy Butler. Police found a green "New York Jets" sweatshirt (not jacket) in his closet, and Butler admitted owning it. Butler put on the Jets sweatshirt at a curbside lineup before Officer Hartless's partner. The partner did not think Butler was the killer because the Jets sweatshirt had "too much white on it" and because Butler "had too much meat on him." At dawn, Sergeant Tom Payne and his K–9 police dog searched the La Paz house and backyard, which was dominated by a single large lemon tree, but found nothing. Shortly thereafter, Detective Kelly called his supervisors from his mother's house and recounted that Godine had told him that the murder weapon was under the lemon tree in the backyard of the La Paz house. Police and K–9 dogs searched the backyard and under the lemon tree for a second time, but again came up empty.

An hour after these searches, Detective Kelly and his brother Godine arrived at the backyard of the La Paz house. Detective Kelly walked directly to the lemon tree, kneeled down, and stood up with a .22–caliber revolver and a .38–caliber revolver. Both revolvers had been cleaned of fingerprints. The .22–caliber revolver was owned by Darin Palmer and would turn out to be the murder weapon. Police thereafter found a prescription pill bottle near the murder scene in the park, filled with .22 caliber bullets. The prescription on the bottle was made out to Palmer.

Detective Kelly recounted the following story to his supervisors, which he claimed his brother Godine had told him. According to Godine's story, as recounted by Detective Kelly, in the early hours of the morning, shortly before SDPD officers arrived at the La Paz house, Butler had gone to the house and given Godine the revolvers with instructions to hide them. Godine had taken both guns and thrown them under the lemon tree. When his supervisors asked Detective Kelly why he had not told them this during their prior telephone conversation, Kelly replied that it had slipped his mind. According to Godine's story, Lisa Johnson, a female companion, was present when Butler gave Godine the revolvers with instructions to hide them. SDPD officers questioned Johnson, but she did not corroborate the story. Rather, she told them that she had seen no guns the previous night and had not heard any

discussions regarding guns. Butler was nonetheless arrested.

When Sergeant Payne learned how easily Detective Kelly had found the revolvers under the lemon tree, he told Burt and Cervantes, "You've got problems with your evidence." To drive his point home, Payne replicated the original dog searches of the La Paz backyard for Burt and Cervantes. A police dog found a test gun hidden under the lemon tree within thirty seconds, indicating that the revolvers found by Kelly may have been planted.

Because admitting that the revolver might have been planted by Detective Kelly would seriously weaken the case, Burt and Cervantes changed the course of their investigation. Cervantes visited Palmer, then in prison, and told him that unless he helped convict Butler he was likely to be accused of the murder of Officer Hartless because the ammunition in his pill bottle was the same as that used to kill Officer Hartless. Palmer agreed to cooperate with the prosecution. Burt then filed a felony complaint against Butler charging him with the murder of Officer Hartless, and sought the death penalty. Butler's murder trial commenced in March 1991. Palmer, now out of prison, was the star witness for the prosecution. In June 1991, Butler's jury hung 6–6, producing a mistrial. One juror, a retired Marine Corps major, told the press that he was convinced that the District Attorney and SDPD were framing Butler.

Shortly after the mistrial, Palmer was arrested and jailed on an unrelated armed robbery charge, and was facing a 25–years–to–life sentence for this "third strike." Burt made a secret agreement with Palmer that he would receive time served on the armed robbery charge, and would not be prosecuted for the murder of Officer Hartless, if he testified the way Burt wanted at the upcoming second trial arising out of that murder. After entering into this agreement, Palmer was granted special favors by Cervantes. Those favors included an exceptionally comfortable cell, unlimited phone calls, fast food, and approximately fifty trips out of jail to have sex with his wife and other women in the office of the District Attorney. Cervantes claims that Burt authorized all of these favors, but Burt denies such authorization.

In December 1991, Butler and the other five plaintiffs were indicted for felony-murder on the theory that they had conspired to kill a member of a rival street gang, but that Officer Hartless intercepted the conspirators and was shot and killed. The second trial began in August 1993, and Palmer was again the star witness. Neither the trial judge, the men on trial, nor the jury were told of the favors afforded Palmer. Among other things, Palmer testified at trial that he was held in a small cell and had almost no contact with the outside world. Burt made no attempt to correct Palmer's testimony.

At the close of trial in April 1994, four of the six plaintiffs were convicted. One pleaded guilty to a lesser charge after the jury deadlocked on the case against him, and one was acquitted. The five convicted plaintiffs received sentences of 31 years to life, 36 to life, 26 to life, 25 to life, and 11 years. Later that year, Burt was given the Prosecutor of the Year award by the San Diego District Attorney's Office for securing these convictions. Shortly thereafter, Palmer was given time served on the armed robbery charge and released.

In November 1995, Palmer was again arrested, this time on an unrelated narcotics charge, another potential "third strike." At Palmer's bail review hearing in January 1996, Palmer's wife threatened Burt in the hallway of the courthouse, in the presence of Cervantes, that she would go to the press with photographs of Palmer having

sex with her in the District Attorney's office unless Burt got the narcotics charge dismissed. Burt complied, and the charge against Palmer was dismissed. The SDPD contacted the District Attorney's Office and complained about the dismissal of the narcotics charge. They were told that the case against Palmer was very difficult to prosecute. In response to the SDPD's complaints, however, the District Attorney's Office transferred the case to the California Attorney General's Office. The Attorney General filed new charges against Palmer and obtained a life sentence. Palmer's wife contacted the press in March 1997. She gave photographs of Palmer having sex with her in the District Attorney's office to the *San Diego Union–Tribune*, which broke the story.

A few months later, the five convicted plaintiffs filed habeas corpus petitions in California state court. The California Court of Appeal appointed Superior Court Judge William Kennedy as the special habeas referee. Judge Kennedy had been the trial judge in both the murder and felony-murder trials of plaintiffs. Judge Kennedy conducted a three-month hearing that included testimony of 52 witnesses and over 300 exhibits. He made extensive findings of prosecutorial misconduct and recommended that all of the convictions be overturned. The California Court of Appeal adopted Judge Kennedy's factual findings and overturned the convictions. The case was set for a new trial before Judge Kennedy. Judge Kennedy disqualified the San Diego District Attorney, and the case was transferred to the California Attorney General.

The five convicted plaintiffs subsequently agreed to a plea bargain with the Attorney General's Office whereby they received time served in exchange for a guilty plea to voluntary manslaughter. They were immediately released. All six plaintiffs, including the man who had been acquitted, subsequently brought this action in California Superior Court under 42 U.S.C. § 1983. Defendants removed to the federal District Court for the Southern District of California. In lieu of answering the complaint, Burt and Cervantes moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Both motions were denied.

Plaintiffs then amended their complaint, and defendants answered. Burt and Cervantes subsequently advised the court that they intended to file summary judgment motions based on official immunity. The district court postponed the Rule 26(f) discovery conference, and authorized "[l]imited discovery on the issue of absolute and/or qualified immunity." Following this limited discovery, Burt and Cervantes each moved for summary judgment, asserting that they were absolutely immune from suit. *See generally Imbler v. Pachtman*, 424 U.S. 409, 431, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (holding that "in initiating a prosecution and in presenting the State's case, [a] prosecutor is immune from a civil suit for damages under § 1983"). The district court granted their motions in part, and denied them in part. Burt and Cervantes appeal the partial denial of their motions.

## II. Discussion

In opposing Burt's and Cervantes's motions for summary judgment, plaintiffs asked the district court to take judicial notice of Judge Kennedy's findings of fact as habeas referee in the California Superior Court, of the California Court of Appeal's finding and opinion in the habeas action, and of several other things. Defendants objected to the taking of judicial notice and made other evidentiary objections. The district court declined to rule on the propriety of judicial notice and the

validity of the evidentiary objections. It wrote,

> [I]n considering this motion, the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his or her favor.... Specifically, in ascertaining immunity, '[t]he factual allegations in the complaint are assumed to be true.' *Milstein v. Cooley,* 257 F.3d 1004, 1007 (9th Cir.2001), *citing Harvey v. Waldron,* 210 F.3d 1008, 1010 (9th Cir.2000); *Buckley v. Fitzsimmons,* 509 U.S. 259, 261, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). *See also Kalina v. Fletcher,* [522 U.S. 118, 122, 118 S.Ct. 502, 139 L.Ed.2d 471] (1997).

The district court thus appears to have decided the defendants' summary judgment motions by assuming the truth of the factual allegations contained in plaintiffs' complaint without regard to whether those allegations had evidentiary support in the record. In effect, the district court appears to have treated defendants' motions as if they had been motions to dismiss under Rule 12(b)(6), rather than motions for summary judgment under Rule 56. The district court erred in so treating defendants' motions.

We are, however, sympathetic to the district court, for there is some confusion in the case law. There are two brief statements, one by this court and one by the Supreme Court, that misstate the evidentiary standard for deciding a motion for summary judgment by a defendant based on official immunity. The problem seems to have originated in *Buckley v. Fitzsimmons,* 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). Plaintiffs in that case had brought a § 1983 suit against prosecutors for allegedly fabricating evidence and making false statements. Without describing the procedural background of the case, the Court wrote, "[W]e make *two important assumptions* about this case:

*first, that petitioner's allegations are entirely true;* and, second that they allege constitutional violations for which 7172 § 1983 provides a remedy." *Id.* at 261, 113 S.Ct. 2606 (emphasis added). It is evident from the opinion in the court of appeals that the case was decided on a motion to dismiss under Rule 12(b)(6), *see Buckley v. Fitzsimmons,* 919 F.2d 1230, 1236 (7th Cir.1990), but the Supreme Court nowhere states this in its opinion.

In *Fletcher v. Kalina,* 93 F.3d 653, 654 (9th Cir.1996), we quoted the Court's statement in *Buckley v. Fitzsimmons* without regard to the procedural context in which it had been made. In a case in which defendant had moved for summary judgment based on absolute immunity, we wrote, "In determining immunity, we must accept the plaintiff's allegations as true. *See Buckley v. Fitzsimmons,* 509 U.S. 259, 261, 113 S.Ct. 2606, 125 L.Ed.2d 209 ... (1993)." The Supreme Court affirmed our judgment, repeating our statement almost verbatim in the course of its opinion. It wrote, "In determining immunity, we accept the allegations of respondent's complaint as true. *See Buckley v. Fitzsimmons,* 509 U.S. 259, 261, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993)." *Kalina v. Fletcher,* 522 U.S. 118, 122, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997).

The district court in this case cited four cases to support its conclusion that it was required to accept the truth of the allegations in plaintiffs' complaint. Three of those cases do not support the district court's conclusion. In two of these cases, *Milstein v. Cooley* and *Harvey v. Waldron, supra,* we were reviewing denials of motions to dismiss under Rule 12(b)(6) rather than motions for summary judgment. The third case was *Buckley v. Fitzsimmons* in which the Supreme Court was also reviewing a denial of a motion to dismiss under Rule 12(b)(6). The fourth case was the

Supreme Court's decision in *Kalina v. Fletcher*. The above-quoted statement in that case supports the district court's conclusion. If the statement in *Kalina v. Fletcher* is an accurate statement of the law with respect to a motion for summary judgment, the district court was correct in concluding it was required to assume that the allegations in plaintiffs' complaint were true regardless of any supporting evidence.

It is apparent that the brief statements by this court and the Supreme Court in the *Kalina* case are inadvertent misstatements. Not only are the statements flatly inconsistent with established law; they are also directly followed by a citation to *Buckley v. Fitzsimmons*. We therefore read these two statements as consistent with the underlying statement in *Buckley v. Fitzsimmons* on which they rely. The statement in *Buckley v. Fitzsimmons* is an entirely conventional, almost boilerplate, statement of the rule that in deciding a motion to dismiss under Rule 12(b)(6) facts alleged in the complaint must be taken as true. To the extent that the statements in the two *Kalina* opinions, both in our court and the Supreme Court, are inconsistent with the statement in *Buckley v. Fitzsimmons*, we believe that they should not be followed. These statements cannot have been intended, and should not be taken, as requiring that a motion for summary judgment based on official immunity be decided outside the ordinary framework for deciding motions for summary judgment.

■ We therefore hold that summary judgment law after the Supreme Court's decision in *Kalina v. Fletcher* remains the same as it was before that decision. Under that law, if a defendant moving for summary judgment has produced enough evidence to require the plaintiff to go beyond his or her pleadings, the plaintiff must counter by producing evidence of his or her own. If in that circumstance the plaintiff fails to produce evidence, the district court is not required (or even allowed) to assume that the challenged factual allegations in the plaintiff's complaint are true. Similarly, if in that circumstance the plaintiff produces evidence that is not enough, by itself, to create a genuine issue of material fact, the district court is not required (or even allowed) to assume the truth of challenged allegations in the complaint in order to supplement that evidence. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160–61, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.,* 210 F.3d 1099, 1102–03 (9th Cir.2000). If discovery has been curtailed by the district court because the defendant has asserted official immunity from suit, the district court may to some extent relax the evidentiary standards for the plaintiff in recognition of the restrictions on discovery, but the requirement that the plaintiff produce evidence nonetheless remains. *See DiMartini v. Ferrin,* 889 F.2d 922, 926–27 (9th Cir.1989).

■ Our understanding of the law—and our reading of the Supreme Court's brief statement in *Kalina*—is supported by the function of the defense of official immunity in our system. The Supreme Court has held that official immunity, whether qualified or absolute, is "an *immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 817, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)) (emphasis in original). Thus, in the usual case where a defendant asserts an official immunity defense, the district court first decides whether the facts alleged in the complaint, assumed to be true, yield the

conclusion that the defendant is entitled to immunity. This is the analysis under Rule 12(b)(6) on a motion to dismiss. If, taking the facts as stated in the complaint, the defendant is entitled to immunity, no discovery should be permitted and the case should be dismissed. *See Mitchell,* 472 U.S. at 526, 105 S.Ct. 2806 ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal [pursuant to Rule 12(b)(6) ] before the commencement of discovery."). If a plaintiff passes this initial hurdle, he or she is entitled to enough discovery to permit the court to rule on a defendant's subsequent summary judgment motion brought under Rule 56. *See Mitchell,* 472 U.S. at 526, 105 S.Ct. 2806 ("Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts.").

The Supreme Court has clearly, and repeatedly, admonished that official immunity is immunity from suit rather than merely immunity from liability. *See, e.g., Saucier v. Katz,* 533 U.S. 194, 200–01, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Behrens v. Pelletier,* 516 U.S. 299, 305–06, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996); *Mitchell,* 472 U.S. at 526, 105 S.Ct. 2806; *Harlow,* 457 U.S. at 818, 102 S.Ct. 2727. It would therefore be extremely odd if, in ruling on a defendant's motion for summary judgment based on official immunity, a district court were required to assume that the allegations in plaintiff's complaint are true. If that were the law, the defendant would effectively be deprived of the protection afforded by a motion for summary judgment, and would be given only the protection afforded by a motion to dismiss. That is, the defendant would always be obliged to go to trial if the plaintiff's allegations (as distinct from plaintiff's evidence) would overcome a claim of official immunity. If this were the law, a defendant moving for summary judgment based on official immunity would have to go to trial more, rather than less, often than a defendant moving for summary judgment on some other basis. Given that the very purpose of official immunity is to provide immunity from trial, this cannot be the law.

## Conclusion

We hold that a district court is not required (or even allowed) to assume that challenged factual allegations in a plaintiff's complaint are true, irrespective of any evidentiary support, if a defendant makes a properly supported motion for summary judgment based on official immunity that would, on a motion for summary judgment in any other civil case, require plaintiff to produce evidence in opposition. Because the district court misunderstood the evidentiary standard in ruling on defendants' motions for summary judgment based on official immunity, we vacate the district court's ruling and remand for further proceedings consistent with this opinion. We recognize that the district court's misunderstanding of the evidentiary standard may have led it to be more restrictive in the discovery it allowed to plaintiff than it would have been if it had properly understood the standard, and that the court may have led plaintiffs to seek to discover and introduce less evidence than they otherwise would have done. We leave it to the district court on remand to allow additional discovery, if appropriate, based on the evidentiary standard plaintiff must meet in responding to a properly supported motion for summary judgment.

VACATED and REMANDED. The parties to bear their own costs on appeal.