Leonard R. MILSTEIN,
Plaintiff–Appellant,

v.

Stephen L. COOLEY;  Robert B.
Foltz;  County of Los Angeles,
Defendants–Appellees.

No. 99–56682.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 9, 2001

Filed July 20, 2001

Wiley Ramey, Van Nuys, California, for the appellant.

Steven J. Renick, Manning & Marder Kasss, Ellrod, Ramirez LLP, Los Angeles, California, for the appellees.

Before: HUG and B. FLETCHER, Circuit Judges, and KING,* District Judge.

HUG, Circuit Judge:

## I. INTRODUCTION

A criminal defense attorney accused assistant district attorneys of framing him for suborning perjury, offering false documents, and soliciting bribery. He sued under 42 U.S.C. § 1983 for due process violations and malicious prosecution. The district court dismissed his second amended complaint on the basis of absolute prosecutorial immunity, and this appeal followed. Because certain of the prosecutors' acts were not done in their role as advocates, they are not shielded by absolute immunity. We affirm in part, reverse in part, and remand.

## II. BACKGROUND

We take the following facts from the Second Amended Complaint.[1] Plaintiff–Appellant Leonard R. Milstein is a criminal defense attorney. Commencing in 1988 and continuing through 1989, Milstein represented Brad Millward, who was tried for two counts of homicide. Millward was acquitted of one count, and the jury deadlocked on the other count. As a result of his successful defense of Millward, Defendant–Appellee prosecutors Stephen L. Cooley and Robert B. Foltz conspired to deny Milstein due process and subject him to malicious prosecution.

Specifically, Cooley and Foltz approached one Gutierrez, a defense witness in the Millward trial who was then serving a California penal sentence, for the purpose of inducing Gutierrez to agree to testify falsely in a contemplated prosecution of Milstein for subornation of perjury, offering false documents, and solicitation of bribery. Gutierrez agreed.

Following this agreement with Gutierrez, Cooley and Foltz then filed a crime report against Milstein with the Los Angeles County Sheriff's and District Attorney's offices. The crime report listed Cooley and Foltz as the complaining witnesses or crime victims. Cooley, Foltz, and Doe 1 (a District Attorney's investigator answerable to Cooley and Foltz) then investigated the purported offense.

Upon concluding this investigation, Cooley and Foltz secured a grand jury indictment against Milstein. Milstein alleges that "Cooley and Foltz would mislead, misadvise, and mischaracterize the 'evidence' against plaintiff during grand jury proceedings where said defendants ... posed as 'advisors' when in reality [they] were complaining witnesses." This indictment was dismissed by the California Superior Court.

After that, Cooley and Foltz instructed Doe 1 to sign a criminal complaint against Milstein (in order to avoid another grand jury proceeding) which resulted in the issuance of an arrest warrant and reprosecution via an information. Upon Milstein's re-arraignment, Cooley and Foltz appeared in Municipal Court to oppose the re-appointment of Milstein's prior counsel (who had successfully argued for the dismissal of the prior grand jury indictment). Milstein was convicted by a jury in May of 1995, but the conviction was reversed on appeal for insufficiency of the evidence.

Milstein's complaint also detailed allegedly defamatory statements made by Cooley and Foltz to the press. Following Milstein's jury trial conviction, Foltz commented to the Los Angeles Daily Journal,

---

* Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

1. As discussed below, because the district court granted a Rule 12(b)(6) dismissal, we accept the facts as alleged by Milstein.

"That's what you get when you step over the line." And on the day that Milstein's conviction was reversed on appeal, Cooley commented to the Daily Journal, "Obviously, he is still smarting from the fact that the system-in an effort to preserve the integrity of the criminal trial process-successfully exposed his alleged criminal misconduct."

The district court dismissed the Second Amended Complaint with prejudice on the grounds of absolute prosecutorial immunity.

### III. ANALYSIS

■ We have jurisdiction pursuant to 28 U.S.C. § 1291. A dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is reviewed de novo. *Harvey v. Waldron,* 210 F.3d 1008, 1010 (9th Cir.2000). The factual allegations in the complaint are assumed to be true. *Id.; Buckley v. Fitzsimmons,* 509 U.S. 259, 261, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). Decisions by a district court to afford public officials absolute or qualified immunity are reviewed de novo. *Herb Hallman Chevrolet v. Nash–Holmes,* 169 F.3d 636, 642 (9th Cir.1999).

#### A. Absolute Immunity

##### 1. In General

The text of 42 U.S.C. § 1983, which establishes a federal cause of action for the violation of federal rights by state officials, contains no exceptions.[2] *Buckley,* 509 U.S. at 268, 113 S.Ct. 2606. However, the Supreme Court has attributed to the Congress that passed § 1983 knowledge of then-existing common-law immunities, and the lack of an explicit abrogation of these immunities has been interpreted as preserving them. *Burns v. Reed,* 500 U.S. 478, 484, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991); *Imbler v. Pachtman,* 424 U.S. 409, 418, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Tenney v. Brandhove,* 341 U.S. 367, 376, 71 S.Ct. 783, 95 L.Ed. 1019 (1951).

■ The immunity of a prosecutor is based upon the same purpose that underlies the immunity of judges and grand jurors acting within the scope of their duties: to protect the judicial process. *Burns,* 500 U.S. at 485, 111 S.Ct. 1934; *Imbler,* 424 U.S. at 422–23, 96 S.Ct. 984. Specifically, absolute immunity for prosecutors is warranted (1) to allow prosecutors to focus their energies on prosecuting, rather than defending lawsuits, *Burns,* 500 U.S. at 485, 111 S.Ct. 1934; *Imbler,* 424 U.S. at 423, 425, 96 S.Ct. 984; (2) to enable prosecutors to exercise independent judgment in deciding which suits to bring and conducting them in court, *Burns,* 500 U.S. at 485, 111 S.Ct. 1934; *Imbler,* 424 U.S. at 423–24, 96 S.Ct. 984; (3) to preserve the criminal justice system's function of determining guilt or innocence by ensuring that triers of fact are not denied relevant (although sometimes conflicting) evidence because of prosecutors' fear of suit, *Imbler,* 424 U.S. at 426, 96 S.Ct. 984; and (4) to ensure fairness to defendants by enabling judges to make rulings in their favor without the subconscious knowledge that such rulings could subject the prosecutor to liability, *id.* at 427, 96 S.Ct. 984. "To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious

---

**2.** The text provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

or dishonest action deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest." *Id.* Furthermore, prosecutorial misconduct is deterred, apart from private civil actions, by the threat of criminal prosecution and professional discipline, *Burns,* 500 U.S. at 486, 111 S.Ct. 1934; *Imbler,* 424 U.S. at 429, 96 S.Ct. 984, and by prosecutors' accountability to either superiors or the electorate.

The Supreme Court has established several principles for analyzing a prosecutor's claim of absolute immunity. First, immunity decisions are based on "the nature of the function performed, not the identity of the actor who performed it." *Kalina v. Fletcher,* 522 U.S. 118, 127, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997) (quoting *Forrester v. White,* 484 U.S. 219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)); *Buckley,* 509 U.S. at 269, 113 S.Ct. 2606 (same); *Burns,* 500 U.S. at 486, 111 S.Ct. 1934. "[T]he actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor." *Buckley,* 509 U.S. at 273, 113 S.Ct. 2606.

■ Second, the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question. *Id.* at 269, 113 S.Ct. 2606; *Burns,* 500 U.S. at 486, 111 S.Ct. 1934. "The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Burns,* 500 U.S. at 486–87, 111 S.Ct. 1934; *see also Buckley,* 509 U.S. at 273, 113 S.Ct. 2606.

Finally, acts undertaken by a prosecutor "in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State," are entitled to the protections of absolute immunity. *Kalina,* 522 U.S. at 126, 118 S.Ct. 502 (quoting *Buckley,* 509 U.S. at 273, 113 S.Ct. 2606). As the Court explained in *Burns:*

> [T]he concern with litigation in our immunity cases is not merely a generalized concern with interference with an official's duties, but rather is a concern with interference with the conduct closely related to the judicial process.... That concern therefore justifies absolute prosecutorial immunity only for actions that are connected with the prosecutor's role in the judicial proceedings, not for every litigation-inducing conduct.

500 U.S. at 494, 111 S.Ct. 1934 (citations omitted).

And our court has added: "Intent should play no role in the immunity analysis." *Ashelman v. Pope,* 793 F.2d 1072, 1078 (9th Cir.1986) (en banc); *see also McCarthy v. Mayo,* 827 F.2d 1310, 1315 (9th Cir.1987) ("The intent of the prosecutor when performing prosecutorial acts plays no role in the immunity inquiry.").

### 2. *Evolution of Absolute Prosecutorial Immunity*

■ Because Milstein has alleged numerous separate acts, each of which must be considered individually, the analysis will be facilitated by an initial discussion of absolute immunity precedent. The seminal case on absolute immunity for prosecutors is *Imbler v. Pachtman,* where the Supreme Court held that "in initiating a prosecution and in presenting the State's case," the prosecutor is immune from a civil suit for damages under § 1983. 424 U.S. at 431, 96 S.Ct. 984. This immunity covers the knowing use of false testimony at trial, the suppression of exculpatory evidence, and malicious prosecution.[3] *Id.* at

---

**3.** Imbler alleged that Pachtman had "prosecuted him with knowledge of a lie detector test that had 'cleared' Imbler." at 416. Fairly read, this alleges a malicious prosecution, i.e., one that the prosecutor believed not to be supported by probable cause. *See McCubbrey v. Veninga,* 39 F.3d 1054, 1055 (9th Cir.1994).

416, 96 S.Ct. 984. The Court reasoned that these activities are "intimately associated with the judicial phase of the criminal process." *Id.* at 430, 96 S.Ct. 984. The Court acknowledged that at some point, and with respect to some decisions, the prosecutor no doubt functions as an administrator or investigator rather than as an officer of the court, but refused to draw that line in *Imbler*. *Id.* at 431 n. 33, 96 S.Ct. 984.

In *Burns v. Reed*, the Court held that absolute immunity applied to a prosecutor's "appearance in court in support of an application for a search warrant and the presentation of evidence at that hearing." 500 U.S. at 492, 111 S.Ct. 1934. The Court reasoned that "appearing before a judge and presenting evidence in support of a motion for a search warrant clearly involve the prosecutor's role as advocate for the State, rather than his role as administrator or investigative officer." *Id.* at 491, 111 S.Ct. 1934 (quotations omitted). The prosecutor was thus immune to liability based on the plaintiff's allegations that he had elicited false testimony during the hearing. *Id.* at 482, 111 S.Ct. 1934. The Court reasoned that its conclusion logically flowed from the common-law immunity against defamation suits arising from statements made in judicial proceedings. *Id.* at 489–90, 111 S.Ct. 1934.[4]

However, the *Burns* Court refused to grant absolute immunity for the prosecutor's act of providing legal advice to police. *Id.* at 496, 111 S.Ct. 1934. The Court rejected the government's argument that giving legal advice is related to a prosecutor's role in screening cases for prosecution:

That argument, however, proves too much. Almost any action by a prosecutor, including his or her direct participation in purely investigative activity, could be said to be in some way related to the ultimate decision whether to prosecute, but we have never indicated that absolute immunity is that expansive. Rather, as in *Imbler*, we inquire whether the prosecutor's actions are *closely associated with the judicial process*. Indeed, we implicitly rejected the United States' argument in *Mitchell* [*v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) ] where we held that the Attorney General was not absolutely immune from liability for authorizing a warrantless wiretap. Even though the wiretap was arguably related to a potential prosecution, we found that the Attorney General "was not acting in a prosecutorial capacity" and thus was not entitled to the immunity recognized in *Imbler*.

*Id.* at 495–96, 111 S.Ct. 1934 (emphasis added)[5]; *see also Kalina*, 522 U.S. at 127, 118 S.Ct. 502.

The limited availability of absolute immunity was further indicated in *Buckley v. Fitzsimmons*, where the Supreme Court denied absolute immunity to prosecutors who were sued for fabricating evidence "during the early stages of the investigation" where "police officers and assistant prosecutors were performing essentially the same investigatory functions." 509 U.S. at 262–63, 275–76, 113 S.Ct. 2606. The fabrication allegation was that prosecutors, after three expert witnesses could not connect a bootprint to the suspect (the § 1983 plaintiff), "shopped" for the opinion

---

4. For a different view of the common-law immunities, see *Burns*, 500 U.S. at 498–506, 111 S.Ct. 1934 (Scalia, J., concurring).

5. This reasoning, rejected by the Supreme Court, seems to have been the main thrust of this court's earlier opinion in *Demery v. Kupperman*, 735 F.2d 1139, 1144 (9th Cir.1984), relied upon heavily by Appellees.

of a particular expert who was well known for her willingness to fabricate unreliable expert testimony. *Id.* at 262, 113 S.Ct. 2606. In denying absolute immunity, the Court reasoned:

> There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is "neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other."

*Id.* at 273, 113 S.Ct. 2606 (quoting *Hampton v. Chicago,* 484 F.2d 602, 608 (7th Cir.1973) (Stevens, J.) (denying absolute immunity for prosecutor who participated in planning and execution of police raid on suspected weapons cache)); *Kalina,* 522 U.S. at 126, 118 S.Ct. 502; *see also Herb Hallman Chevrolet,* 169 F.3d at 642 ("A prosecutor may only shield his investigative work with qualified immunity."). Additionally, the Court announced a line before which absolute immunity could not apply: "A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Buckley,* 509 U.S. at 274, 113 S.Ct. 2606. Accordingly, the Court noted that the alleged fabrication occurred well before the grand jury was empaneled. *Id.* at 275, 113 S.Ct. 2606.

The plaintiff in *Buckley* had also asserted a claim based upon alleged false statements made to the press. The Court likewise refused to grant absolute immunity. "Comments to the media have no functional tie to the judicial process just because they are made by a prosecutor." *Id.* at 277, 113 S.Ct. 2606.

The last Supreme Court case to address absolute immunity for prosecutors was *Kalina v. Fletcher,* where absolute immunity was denied to a prosecutor who filed the equivalent of an affidavit in support of a motion for an arrest warrant. The prosecutor had filed three documents: an information charging burglary, a motion for an arrest warrant, and a "Certification. for Determination of Probable Cause," a sworn document establishing the grounds for issuing the warrant. 522 U.S. at 120–21, 118 S.Ct. 502. The Court reasoned:

> [P]etitioner's activities in connection with the preparation and filing of two of the three charging documents-the information and the motion for an arrest warrant-are protected by absolute immunity. Indeed, except for her act in personally attesting to the truth of the averments in the certification, it seems equally clear that the preparation and filing of the third document in the package was part of the advocate's function as well.

*Id.* at 129, 118 S.Ct. 502. However, in personally attesting, "petitioner performed an act that any competent witness might have performed," and was thus not entitled to absolute immunity. *Id.* at 129–30, 131, 118 S.Ct. 502; *accord Morley v. Walker,* 175 F.3d 756, 760 (9th Cir.1999) (relying on *Kalina* in denying absolute immunity to prosecutor who executed oath or affidavit in support of arrest warrant). "Even when the person who makes the constitutionally required 'Oath or affirmation' is a lawyer, the only function that she performs in giving sworn testimony is that of a witness." *Kalina,* 522 U.S. at 131, 118 S.Ct. 502 (quoting U.S. Const. amend. IV).

### 3. As Applied to Cooley and Foltz

To recap, Milstein's complaint alleges that Cooley and Foltz:

(1) fabricated evidence by recruiting Gutierrez to recant his trial testimony and instead falsely claim that Milstein had solicited him to commit perjury;

(2) used that false statement as the basis for filing a crime report against Milstein, listing themselves as the complaining witnesses or crime victims;

(3) investigated the offense reported in the crime report;

(4) secured an indictment by posing as "advisors" to the grand jury;

(5) after the indictment was dismissed, secured an information and an arrest warrant by instructing a subordinate (Doe 1) to sign a false criminal complaint;

(6) opposed the re-appointment of Milstein's prior counsel; and

(7) made false statements to the press.

### (i) Fabricating Evidence

■ Appellees are not entitled to absolute immunity if one accepts as true the allegations that they knowingly obtained false statements from Gutierrez for the purpose of prosecuting Milstein. Shopping for a dubious expert opinion is fabricating evidence, which is unprotected by absolute immunity. *Buckley,* 509 U.S. at 276, 113 S.Ct. 2606. It follows, then, that acquiring known false statements from a witness for use in a prosecution is likewise fabricating evidence that is unprotected by absolute immunity. This alleged conduct occurred before the grand jury was empaneled, *id.* at 275, 113 S.Ct. 2606, before Milstein was arrested, *Burns,* 500 U.S. at 492, 111 S.Ct. 1934, and it must necessarily have occurred before the existence of probable cause, *Buckley,* 509 U.S. at 274, 113 S.Ct. 2606, (which, if Milstein is believed, can never occur because Appellees concocted the essential facts). This al-

leged act is not protected by absolute immunity.

### (ii) Filing a False Crime Report

■ Filing a crime report as a complaining witness or crime victim is analogous to filing an affidavit or oath in support of an arrest warrant, *see Kalina* 522 U.S. at 129–31, 118 S.Ct. 502; *Morley,* 175 F.3d at 760. Although Milstein's complaint does not indicate that the crime report was sworn, the function is nonetheless that of a witness, not an advocate. Absolute immunity does not protect Appellees for this alleged act.

### (iii) Investigating the Purported Crime

■ From the chronology of Milstein's complaint, Appellees are alleged to have conducted their investigation after filing the crime report and before empaneling the grand jury. This suggests that any investigating was done in the role of detective rather than advocate. This alleged act is not protected by absolute immunity. *Buckley,* 509 U.S. at 273, 113 S.Ct. 2606.

### (iv) Securing a Grand Jury Indictment

Milstein alleges that Appellees "posed as advisors" before the grand jury "when in reality they were complaining witnesses." "Before the grand jury the prosecutor has the dual role of pressing for an indictment and of being the grand jury adviser. In case of conflict, the latter duty must take precedence." *United States v. Williams,* 504 U.S. 36, 63, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992) (Stevens, J., dissenting) (quotation omitted). If Cooley and Foltz were advising rather than advocating, they could arguably not be entitled to absolute immunity. However, Milstein does not argue that Appellees were actually functioning as advisors rather than advocates. Instead, he suggests that Appellees, while actually pressing for an indictment, gave

the misleading impression to the grand jury that they were merely neutral advisors.

Because using a grand jury is one way of "initiating a prosecution," *Imbler*, at 431, 96 S.Ct. 984, any acts of a prosecutor before a grand jury could arguably be covered by absolute immunity. *See Herb Hallman Chevrolet*, 169 F.3d at 643 ("prosecutors are absolutely immune from liability under § 1983 for their conduct before grand juries") (quoting *Burns*, 500 U.S. at 490 n. 6, 111 S.Ct. 1934); *Fields v. Soloff*, 920 F.2d 1114, 1120 (2d Cir.1990) (affording absolute immunity to prosecutor who oversaw confiscation of material from grand jury that was attempting to initiate an indictment sua sponte). However, because grand juries can be empaneled for investigative purposes, well before probable cause exists, *see Williams*, 504 U.S. at 48, 112 S.Ct. 1735, such a proposition seemingly runs afoul of *Buckley*'s rule that a prosecutor cannot function as an advocate before probable cause exists.

■ We need not determine the exact scope of protection afforded by absolute immunity for acts performed by prosecutors before grand juries. Milstein's allegations as to this particular grand jury focus on Appellee's efforts to indict, not to investigate a crime. Initiating a prosecution has consistently been identified as a function within the prosecutor's role as advocate. *See Imbler*, 424 U.S. at 431, 96 S.Ct. 984; *Mishler v. Clift*, 191 F.3d 998, 1008 (9th Cir.1999) ("Filing charges and initiating prosecution are functions that are integral to a prosecutor's work.") Accordingly, Appellees' functions before this grand jury are protected by absolute immunity.

### (v) Securing an Information and an Arrest Warrant

■ The foregoing reasoning applies with even more force to the prosecutor's actual decision to prosecute, whether it be by grand jury indictment or information. Appellees are alleged to have re-prosecuted Milstein via an information that was supported by Doe 1's criminal complaint. To the extent that Doe 1's criminal complaint resulted in an information charging Milstein, Appellees enjoy absolute immunity. *Imbler*, 424 U.S. at 431, 96 S.Ct. 984; *Mishler*, 191 F.3d at 1008.

■ However, Milstein also states that the criminal complaint supported the issuance of an arrest warrant. On the one hand, Milstein's Second Amended Complaint may be attempting to cast the criminal complaint as akin to the affidavits or oaths at issue in *Kalina* and *Morley*-more the product of witness participation than prosecutorial advocacy. But on the other hand, the usual function of a criminal complaint is not for the prosecutor to attest to facts based on personal knowledge. Instead, the prosecutor simply recounts the facts, produced by an investigation, that provide probable cause to arrest-in this case, Gutierrez's statements. *Kalina* indicated that but for counsel personally swearing to the facts contained in her certification supporting the motion for an arrest warrant, she would have been protected by absolute immunity. *Id.*, 522 U.S. at 129, 118 S.Ct. 502. Because Milstein does not allege that Appellees (or Doe 1) personally swore to the facts in the criminal complaint, absolute immunity is appropriate for this act.

### (vi) Opposing Re-appointment of Counsel

■ Appearing in court to argue a motion is a quintessential act of advocacy. *Burns*, 500 U.S. at 492, 111 S.Ct. 1934. Accordingly, absolute immunity is warranted as to Appellee's appearance in court to urge that Milstein's prior counsel not be reappointed. Milstein's allegations of Appellees' motives are irrelevant. *Ashelman*, 793 F.2d at 1078.

**(vii) Making Statements to the Media**

Absolute immunity does not protect prosecutors for comments they make to the media. *Buckley*, 509 U.S. at 277, 113 S.Ct. 2606. We express no opinion as to whether the comments at issue here give rise to a valid claim under § 1983.

### CONCLUSION

For the foregoing reasons the district court's dismissal is AFFIRMED as to securing a grand jury indictment, securing an information and an arrest warrant, and opposing the reappointment of counsel. The district court's dismissal is REVERSED and the case REMANDED as to fabricating evidence, filing a false crime report, investigating the purported crime, and making statements to the media.[6]

---

6. We express no opinion as to whether the defense of qualified immunity applies to the remanded claims.