# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LORI BELTRAN; ROBERT BELTRAN;
COBY BELTRAN, by and through his
Guardian Ad Litem Lori Beltran,
　　　　　*Plaintiffs-Appellants,*

v.

SANTA CLARA COUNTY; MELISSA
SUAREZ, individually and as an
employee of the County of Santa
Clara; JENNIFER HUBBS,
individually and as an employee
of the County of Santa Clara;
EMILY TJHIN, individually and as
an employee of the County of
Santa Clara,
　　　　　*Defendants-Appellees.*

No. 05-16976

D.C. No.
CV-03-03767-RMW

OPINION

Appeal from the United States District Court
for the Northern District of California
Ronald M. Whyte, District Judge, Presiding

Argued and Submitted
April 17, 2007—San Francisco, California

Filed June 25, 2007

Before: Warren J. Ferguson, Stephen Reinhardt, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Reinhardt;
Concurrence by Judge Reinhardt;
Partial Concurrence and Partial Dissent by Judge Ferguson

7565

## COUNSEL

Robert R. Powell, Law Offices of Robert R. Powell, San Jose, California, for the plaintiffs-appellants.

Ann Miller Ravel and Melissa Kiniyalocts, Office of the County Counsel, San Jose, California, for the defendants-appellees.

## OPINION

REINHARDT, Circuit Judge:

This case raises the question whether social workers are entitled to absolute immunity for verified statements in peti-

tions filed with a dependency court. We hold that they are, both with respect to dependency petitions and custody petitions, as well as the statement of facts submitted therewith.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Since his premature birth on June 5, 1998, Coby Beltran ("Coby") has suffered from numerous medical maladies, including an undiagnosed and unsuccessfully treated bowel motility problem. Coby's gastrointestinal problems led to occasions where his Body Mass Index fell below the fifth percentile, putting him at risk of significant long-term damage. During the first four years of Coby's life, Child Protective Services Department of the Social Services Agency of Santa Clara County ("the Department") received four separate referrals based on claims that Coby's mother suffered from Munchausen Syndrome by Proxy, a condition in which a parent (generally the mother) takes affirmative steps to keep her child ill in order to gain medical attention. Social workers investigated each referral and, each time, deemed the referral "unfounded."

This case involves the results of a fifth referral of suspected abuse based on Munchausen Syndrome by Proxy received, in July 2002, from one of Coby's doctors. Melissa Suarez ("Suarez"), a case worker employed by the Department, investigated this referral. On August 12, 2002, following the investigation, Suarez's supervisor, Emily Tjhin ("Tjhin"), signed and filed a dependency petition pursuant to California Welfare and Institutions Code § 300, seeking to have Coby made subject to the jurisdiction of the juvenile court. The dependency petition included a three-page statement of facts that described the findings of Suarez's investigation. The Bel-

---

[1]Because this case is before the panel on a 12(b)(6) motion, we must take all factual allegations in the complaint as true, construing them in the light most favorable to the moving party. *Grosso v. Miramax Film Corp.*, 400 F.3d 658 (9th Cir. 2005).

trans assert that much of this information is untrue and that Suarez and Tjhin deliberately fabricated evidence and suppressed information favorable to the Beltrans.

Suarez also signed and filed an Application and Custody Petition in Support of Protective Custody Warrant ("custody petition") pursuant to California Welfare and Institutions Code § 340, requesting permission to remove Coby from his home pending the conclusion of the dependency proceedings. The custody petition incorporated the dependency petition by reference. A Protective Custody Warrant was issued by the court that same day. Two days later, on August 14, 2002, Coby was removed from his parents' custody pursuant to the warrant and placed in a children's shelter. On August 19, 2002, an initial detention hearing was held and the court found that Coby should be detained and temporarily placed under the care and supervision of the Department of Family and Children's Services. However, on September 16, 2002, after a full hearing, the dependency petition was denied and Coby was returned to his parents by order of the juvenile court.

The Beltrans brought suit against Suarez and Tjhin under 42 U.S.C. § 1983 for their actions in connection with the temporary removal of Coby from their custody and the attempt to place him under the care and supervision of the state agency, alleging violations of their rights of family association, privacy, and freedom from unreasonable seizure. The district court concluded that Tjhin and Suarez were entitled to absolute immunity for their actions in connection with the signing and filing of the custody and dependency petitions, and dismissed the federal law claims that arose out of those actions.[2]

---

[2]In district court, the Beltrans also alleged that various constitutional violations occurred while Coby was in custody. Those violations are not at issue on this appeal. Accordingly, defendants' motion to strike pages 14 through 21 of appellants' opening brief relating to these later violations is granted.

## ANALYSIS

**[1]** The touchstone of the absolute immunity analysis is the "nature of the function performed, not the identity of the actor who performed it." *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997). Courts grant absolute immunity from liability for suits arising out of the performance of functions that are necessary to the judicial process. *Miller v. Gammie*, 335 F.3d 889, 896 (9th Cir. 2003) (en banc) (citing *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). At early common law, this included most actions of judges, grand jurors, and prosecutors. *Imbler*, 424 U.S. at 422-24. Witnesses testifying in court received absolute immunity, but "complaining witnesses," those swearing to the facts in the initial complaint, did not. *Kalina*, 522 U.S. at 130-31; *Burns v. Reed*, 500 U.S. 478, 489-90 (1991). Absolute immunity has been extended to the actions of other state actors when they engage in functions that are quasi-prosecutorial or quasi-judicial. *Antoine v. Bryers & Anderson, Inc.*, 508 U.S. 429, 435-36 (1993); *see also Miller*, 335 F.3d at 897. However, the Court has not recognized absolute immunity for acts that are "further removed from the judicial phase of proceedings than the act of a prosecutor in seeking an indictment." *Kalina*, 522 U.S. at 128 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). In this circuit, we have determined that under this framework social workers are entitled to absolute immunity for their "actions in investigating and presenting evidence to the dependency court." *Doe v. Lebbos*, 348 F.3d 820, 825 (9th Cir. 2003).

On appeal, plaintiffs argue, first, that Tjhin is not eligible for absolute immunity for swearing to the facts in the dependency petition because when she did so she was acting as a complaining witness, not entitled to immunity. *See Kalina,* 522 U.S. at 129. Second, they argue that Suarez is not entitled to absolute immunity for filing the custody petition, because this action is analogous to that of a police officer filing an arrest warrant, for which only qualified immunity is available. *See Malley*, 475 U.S. at 343.

Here, as in *Lebbos*, plaintiffs complain that the social workers failed to properly investigate the case prior to filing the petitions and that they deliberately fabricated evidence presented to the dependency court. *Lebbos* extends absolute immunity to the failure to investigate possible exculpatory evidence and to the fabrication of evidence in dependency petitions. *Lebbos*, 348 F.3d at 826. Immunity exists because the social workers "engaged in these actions as part of [their] initiation and pursuit of child dependency proceedings" and, therefore, they "had the 'requisite connection to the judicial process' to be protected by absolute immunity." *Id.* (quoting *Miller*, 335 F.3d at 896). Thus, under *Lebbos*, the defendants are entitled to absolute immunity.

Plaintiffs urge us to distinguish *Lebbos* because Tjhin filed the dependency petition under penalty of perjury, and *Lebbos* fails to specify that the social worker did so in that case. Plaintiffs argue that it is the act of verifying the petition that makes the social worker like a complaining witness. However, the social worker in *Lebbos* undoubtedly verified the statements in her dependency petition as California law requires that dependency petitions be presented by a social worker, that they include a statement of facts, and that they "shall be verified." CAL. WELF. & INST. CODE §§ 325, 332.

**[2]** Even if the *Lebbos* social worker did not do so, *Lebbos* holds that social workers are immune for their "actions in investigating and presenting evidence to the dependency court," which must realistically under the California procedure include verifying the petition. *Lebbos*, 345 F.3d at 825. The social worker's responsibility to investigate the complaint puts her in a different position vis-a-vis the legal proceeding than the prosecutor in *Kalina* who, by verifying a petition, "performed an act that any competent witness might have performed." *Kalina*, 522 U.S. at 129-30. Only a social worker who performed or supervised the investigation can verify the information presented to the court regarding that investigation. No one else can report both the opinions of those who

interact with the family and the results of the investigation, which include the investigator's observations of the home and the family interactions, and the Department's assessment of the relative credibility of the parties. In verifying a petition with this information, the social worker or her supervisor does not take a "shortcut," as the dissent argues. Dis. op. at 7585. She provides the court with valuable information not otherwise available and verifies that information, which, by law, must be verified. Moreover, rather than acting in a way that is inconsistent with "the ethics of [her] profession," as the prosecutor did in *Kalina*, she is performing her responsibilities as defined by California law. *Kalina*, 522 U.S. at 129-30. It would defy reason to hold that a social worker is immune for investigating the case, preparing and filing the petition, and presenting evidence to the court, but not for signing and verifying the petition that she is required to prepare and present and that describes the investigation she is required to perform or supervise. Like all of these other acts, signing and verifying the petition is "part of [the] initiation and pursuit of child dependency proceedings." *Lebbos*, 345 F.3d at 825. Such acts are even more closely connected to the prosecution of the case than the investigation, since the petition is actually presented to the court. Accordingly, plaintiffs' attempts to distinguish *Lebbos* on these grounds must fail.

**[3]** Plaintiffs also argue that even if absolute immunity is applicable to the acts of signing and verifying dependency petitions, social workers should not be absolutely immune for similar acts with respect to custody petitions. They contend that filing the latter form of petition is analogous to filing a motion for an arrest warrant and, as such, is "further removed from the judicial phase of . . . proceedings." *Kalina*, 522 U.S. at 128 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). This argument is likewise unavailing. We have already held that social workers are entitled to absolute immunity for filing custody petitions. *Coverdell v. Dep't of Soc. & Health Servs.*, 834 F.2d 758, 764 (9th Cir 1987). Although the Supreme Court has discussed absolute immunity since *Coverdell* was

decided, and *Coverdell* was limited in part by *Miller*, 335 F.3d 889, the rationale of *Lebbos* makes clear that in this circuit *Coverdell*'s holding on this point is still good law. Like filing a dependency petition, filing a custody petition is "part of [the] initiation and pursuit of child dependency proceedings." *Lebbos*, 348 F.3d at 826. This close relationship to the prosecution of the case is similar to that which exists when prosecutors file petitions for arrest warrants, an act for which absolute immunity is afforded. *See Kalina,* 522 U.S. at 129. Indeed, the act of a social worker of filing a custody petition is more integrally associated with the prosecution of the case than the act of a prosecutor in filing an arrest warrant. A custody petition cannot be filed without a dependency petition and rests on the same facts as the dependency petition. Also, like the dependency petition, it is filed with the dependency court in order to protect the child. Thus, it serves the same goal as the dependency petition and is part of the same judicial proceeding. Accordingly, we hold that, under *Lebbos*, social workers have absolute immunity for preparing and filing custody petitions, just as they do for preparing and filing dependency petitions. We also hold that, in light of the relationship we have just described between the two types of petitions, the acts of signing and verifying custody petitions are covered by absolute immunity for the same reasons that signing and verifying dependency petitions are.

[4] Plaintiffs further contend that the California legislature has rejected absolute immunity for social workers' submission of facts to the dependency court, and that we are bound by California law. California Government Code § 820.21 purports to strip social workers of absolute immunity from liability for perjury, fabrication of evidence, and failure to disclose exculpatory evidence if committed with malice.[3] Although

---

[3]The statute states:

> Notwithstanding any other provision of the law, the civil immunity of juvenile court social workers, child protection workers,

this Act eliminates immunity under state law, immunity for § 1983 purposes is set by federal law and cannot be overridden by state legislatures. *Wallis v. Spencer*, 202 F.3d 1126, 1144 (9th Cir. 2000). Courts considering social workers' immunity under federal law after the passage of § 820.21, including the *Lebbos* court, have, accordingly, universally ignored the statute. *See, e.g., Lebbos*, 348 F.3d 820; *Miller*, 335 F.3d 889; *Mabe v. San Bernardino County Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1109 (9th Cir. 2001).

In holding that the social workers are immune for their actions in this case, we are not granting social workers absolute immunity for "everything they do," as the plaintiffs argue. Rather, we follow *Lebbos* in recognizing a distinction between the initiation and pursuit of dependency proceedings and other discretionary decisions and recommendations. Nothing in this decision undermines our holdings in *Lebbos* and in *Wallis*, that social workers are not entitled to absolute immunity for their actions relating to the maintenance and care of children in state custody. Consistent with these cases, we afford absolute immunity to social workers only for those actions that are closely connected to the judicial process.

---

and other public employees authorized to initiate or conduct investigations or proceedings pursuant to Chapter 2 (commencing with Section 200) of Part 1 of Division 2 of the Welfare and Institutions Code shall not extend to any of the following, if committed with malice:

(1) Perjury.

(2) Fabrication of evidence.

(3) Failure to disclose known exculpatory evidence.

(4) Obtaining testimony by duress, as defined in Section 1569 of the Civil Code, fraud, as defined in either Section 1572 or Section 1573 of the Civil Code, or undue influence, as defined in Section 1575 of the Civil Code.

CAL. GOV'T CODE § 820.21(a).

## CONCLUSION

**[5]** We are bound by *Lebbos* and, accordingly, affirm the district court's grant of summary judgment on grounds of absolute immunity as to both Suarez and Tjhin for their actions in preparing, verifying, and filing the dependency and custody petitions.

**AFFIRMED.**

---

REINHARDT, Circuit Judge, specially concurring, joined by M. SMITH, Circuit Judge:

*Doe v. Lebbos* is binding law in this circuit. We are required to follow it, and we do so. However, I write this separate concurrence to express my serious doubts as to the correctness of its holding that social workers are entitled to absolute immunity for investigating dependency petitions.

We are required to evaluate absolute immunity claims by analogy to the functions to which absolute immunity applied at the time that 42 U.S.C. § 1983 was enacted. *Kalina v. Fletcher*, 522 U.S. 118, 123-24 (1997). "[B]eyond those functions historically recognized as absolutely immune at common law, qualified and only qualified immunity exists." *Miller v. Gammie*, 335 F.3d 889, 897 (9th Cir. 2003) (en banc). For this reason, the Supreme Court has held that a prosecutor is not entitled to absolute immunity for investigating or certifying a statement of facts in support of an arrest warrant. *Kalina*, 522 U.S. at 129. The court explained that "[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other." *Kalina*, 522 U.S. at 126 (quoting *Hampton v. Chicago*, 484 F.2d 602, 608 (7th Cir. 1973), *cert. denied*, 415 U.S. 917 (1974)). I am

aware of no rule in existence in 1871 giving any official absolute immunity for any investigations, whether conducted in preparation for a judicial proceeding or otherwise.

Nevertheless, *Lebbos* held that a social worker is entitled to absolute immunity for her actions in investigating a complaint —actions that, had they been performed by a detective, a police officer, or a prosecutor, would not warrant absolute immunity. In doing so, *Lebbos* granted absolute immunity to social workers for the performance of a function to which absolute immunity did not apply at common law. This is in apparent contravention of the rule that it is "the nature of the function performed, not the identity of the actor who performed it" that matters for absolute immunity purposes. *Kalina*, 522 U.S. at 127 (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)). Accordingly, I find *Lebbos* extremely difficult to reconcile with the established law of absolute immunity.

---

FERGUSON, Circuit Judge, dissenting in part and specially concurring in part:

Social worker Tjhin personally verified the factual allegations contained in the dependency petition; in so doing, she functioned as the sole complaining witness. *See Kalina v. Fletcher*, 522 U.S. 118, 130-31 (1997) (ruling that certifying truth of facts constitutes functioning as complaining witness). The parents of Coby Beltran ("Coby") assert that, in the verification to which Tjhin swore under penalty of perjury, she made fraudulent allegations concerning the care the Beltrans gave their son. The Supreme Court has consistently denied absolute immunity to complaining witnesses making false allegations. *See, e.g.*, *id.* at 127 n.14 (quoting *Malley v. Briggs*, 475 U.S. 335, 340-41 (1986)). The majority's decision to grant immunity for this alleged fraud expands the doctrine of absolute immunity "beyond those functions

historically recognized as absolutely immune at common law." *Miller v. Gammie*, 335 F.3d 889, 897 (9th Cir. 2003) (en banc). I respectfully dissent.

## I.

On August 12, 2002, social worker Emily Tjhin ("Tjhin"), an employee of the Santa Clara County Social Services Agency, Department of Family and Children's Services, signed and filed a dependency petition ("petition"), seeking to have Coby made subject to the jurisdiction of the juvenile court. The petition stated, inter alia, "Petitioner requests that the court find these allegations to be true. I declare under penalty of perjury under the laws of the State of California that the foregoing and all attachments are true and correct." The petition included numerous allegations not known personally by Tjhin but allegedly based on information provided by various named and unnamed doctors. The petition also included a few allegations not attributed to any source.

On the same day, another employee of the same agency, social worker Melissa Suarez ("Suarez"), filed an Application and Declaration in Support ("warrant application"), requesting that the juvenile court issue a warrant for the protective custody of Coby, pursuant to Cal. Welf. & Inst. Code § 340. The warrant application did not allege any additional facts but referenced the petition filed by Tjhin. Although the requested warrant was initially issued, the juvenile court later determined that Tjhin's petition was without merit and ordered that the child be returned to his parents.

## II.

"The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Burns v. Reed*, 500 U.S. 478, 486-87 (1991). Even when government officers might deserve some measure of immunity, the Supreme Court has "consistently

'emphasized that the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question.' " *Antoine v. Byers & Anderson*, 508 U.S. 429, 432 n.4 (1993) (quoting *Burns*, 500 U.S. at 486). Although absolute immunity must be granted in a narrow category of cases to protect the judicial process, it "leave[s] the genuinely wronged [individual] without civil redress against a [government official] whose malicious or dishonest action deprives him of liberty." *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976). Therefore, the Supreme Court has repeatedly cautioned, "We have been quite sparing in our recognition of absolute immunity, and have refused to extend it any further than its justification would warrant." *Antoine*, 508 U.S. at 432 n.4 (quoting *Burns*, 500 U.S. at 487).

Absolute immunity against § 1983 suits is restricted "to functions that enjoyed absolute immunity at common law in 1871." *Miller*, 335 F.3d at 898. Prosecutors enjoyed absolute immunity at common law with respect to "initiating a prosecution . . . and presenting the State's case." *Imbler*, 424 U.S. at 431. Therefore, by analogy, *Meyers v. Contra Costa County Dep't of Soc. Servs.*, 812 F.2d 1154, 1157 (9th Cir. 1987), extended absolute immunity to social workers performing prosecutorial functions. Other cases in this circuit then further extended immunity for social workers. *See, e.g.*, *Babcock v. Tyler*, 884 F.2d 497 (9th Cir. 1989); *Coverdell v. Dep't of Soc. & Health Servs.*, 834 F.2d 758 (9th Cir. 1987).

However, based on subsequent Supreme Court guidance, we later issued an en banc decision sharply limiting our precedent. We ruled that the "scope of absolute immunity for social workers is extremely narrow." *Miller*, 335 F.3d at 892, 898. We stated, "We must now recognize that beyond those functions historically recognized as absolutely immune at common law, qualified and only qualified immunity exists." *Id.* at 897. We overturned our previous social worker cases that conflicted with *Kalina*, 522 U.S. 118, and *Antoine*, 508 U.S. 429, though we upheld *Meyers*, 812 F.2d 1154, because it

"recognized absolute immunity for social workers *only* for the discretionary, quasi-prosecutorial decisions to institute court dependency proceedings." *Miller*, 335 F.3d at 892, 898 (emphasis added). Finally, we clarified the source of social workers' and prosecutors' immunity: it "is only the *specific* function performed, and not the role or title of the official, that is the touchstone of absolute immunity." *Id.* at 897 (citing *Kalina*, 522 U.S. at 127) (emphasis added).

### III.

Complaining witnesses were not absolutely immune at common law. *Kalina*, 522 U.S. at 127 n.14 (quotation omitted). As the majority recognizes, that remains the rule today: "Witnesses testifying in court receive[ ] absolute immunity, but 'complaining witnesses,' those swearing to the facts in [an] initial complaint, d[o] not." Maj. op. at 7571 (citing *Kalina*, 522 U.S. at 130-31). In *Kalina*, the most recent Supreme Court case to address the scope of prosecutors' absolute immunity, the Court ruled that absolute immunity was not available to a prosecutor where she swore to the truth of the facts supporting her motion for an arrest warrant. 522 U.S. at 129-31. Although a prosecutor has absolute immunity "for preparing and filing charging documents" that initiate a proceeding, that immunity does not extend where she is "personally attesting to the truth of evidence in support of charging documents." *Genzler v. Longanbach*, 410 F.3d 630, 637 (9th Cir. 2005) (citing *Kalina*, 522 U.S. at 130).

Since *Kalina*, the Ninth Circuit has repeatedly held that prosecutors are not entitled to absolute immunity when they swear to facts underlying a charging document. *See Genzler*, 410 F.3d at 637; *Milstein v. Cooley*, 257 F.3d 1004, 1010 (9th Cir. 2001); *Morley v. Walker*, 175 F.3d 756, 760 (9th Cir. 1999). "[I]n personally attesting, '[the prosecutor in *Kalina*] performed an act that any competent witness might have performed,' and was thus not entitled to absolute immunity." *Milstein*, 257 F.3d at 1010 (quoting *Kalina*, 522 U.S. at 129-

30); *see id.* (quoting *Kalina*, 522 U.S. at 131) ("[T]he only function that [the prosecutor] performs in giving sworn testimony is that of a witness."); *Morley*, 175 F.3d at 760 (where prosecutor signs and submits affidavit in support of arrest warrant, he acts as a witness,"[l]ike the prosecutor in *Kalina*," and is not entitled to absolute immunity); *see also Malley*, 475 U.S. at 340-41 (like complaining witness, police officer swearing to affidavit in support of warrant not afforded absolute immunity). The function of social worker Tjhin, personally verifying the factual allegations in the dependency petition, is indistinguishable from that of the prosecutor in *Kalina*, personally certifying the factual allegations in support of her filing papers. *Kalina* dictates that absolute immunity cannot shield Tjhin's allegedly fraudulent statements.

## IV.

Contrary to the majority's view, maj. op. at 7573, *presenting* testimonial evidence is distinct from *personally swearing to the truth* of that evidence. *Kalina*, 522 U.S. at 129-30. Where the petitioner does not allege that the prosecutor personally swore to the facts, absolute immunity may be appropriate. *See Burns*, 500 U.S. at 491; *Imbler*, 424 U.S. at 430; *Milstein*, 257 F.3d at 1012. But in *Doe v. Lebbos*, 348 F.3d 820, 825 (9th Cir. 2003), cited by the majority, there was no argument that the social worker actually swore to the facts contained in the dependency petition.[1] *Kalina* and all of this circuit's cases since *Lebbos* demand that the function of presenting evidence be distinguished from submitting one's own testimony. *See Kalina*, 522 U.S. at 129-30, *Genzler*, 410 F.3d at 637; *Milstein*, 257 F.3d at 1010-11, 1012; *Morley*, 175 F.3d at 760.

The majority asserts that a "realistic" interpretation of Cali-

---

[1] The majority decides that "the social worker in *Lebbos* undoubtedly verified the statements in her dependency petition," maj. op. at 7572, but the *Lebbos* opinion provides no basis for this conclusion.

fornia law nonetheless requires a grant of absolute immunity for social workers personally swearing to facts underlying a dependency petition. Maj. op. at 7572. On the contrary, California law expressly dictates that no immunity lies where a social worker has maliciously engaged in perjury. Cal. Gov't Code § 820.21(a). The California legislature apparently did not believe it "would defy reason," maj. op. at 7573, to find a social worker liable for malicious, false testimony despite any immunity for the initiation of proceedings, related investigations, or presentation of evidence to the court.[2]

The majority claims that swearing to facts in support of a petition must be immune because "signing and verifying the petition is part of the initiation and pursuit of child dependency proceedings." Maj. op. at 7573 (quotation and internal punctuation omitted). But the Supreme Court specifically rejected this "packaged" approach to absolute immunity in *Kalina*, 522 U.S. at 129-30. When the petitioner in *Kalina*

---

[2]The State of California has decided that when the most cherished of human relationships is involved—the relationship between parents and their children—any immunity for social workers who interfere with such bonds shall be limited:

> *Notwithstanding any other provision of the law*, the civil immunity of juvenile court social workers, child protection workers, and other public employees authorized to initiate or conduct investigations or proceedings pursuant to Chapter 2 (commencing with Section 200) of Part 1 of Division 2 of the Welfare and Institutions Code shall not extend to any of the following, if committed with malice:

> (1) Perjury.

> (2) Fabrication of evidence.

> (3) Failure to disclose known exculpatory evidence.

> (4) Obtaining testimony by duress, as defined in Section 1569 of the Civil Code, fraud, as defined in either Section 1572 or Section 1573 of the Civil Code, or undue influence, as defined in Section 1575 of the Civil Code.

Cal. Gov't Code § 820.21(a) (emphasis added).

argued that executing the certificate "summariz[ing] the evidence supporting the charge," *id.* at 121, was "integral to the initiation of the proceeding," *id.* at 130, the Court disagreed:

> That characterization is appropriate for her drafting of the certification, her determination that the evidence was sufficiently strong to justify a probable-cause finding, her decision to file charges, and her presentation of the information and the motion to the court. Each of those matters involved the exercise of professional judgment; indeed even the selection of the particular facts to include in the certification to provide the evidentiary support for the finding of probable cause required the exercise of judgment of the advocate. But that judgment could not affect the truth or falsity of the factual statements themselves. Testifying about facts is the function of the witness . . . .

*Id.* at 130-31.

The majority may find the distinction between prosecutorial and testimonial functions to be impractical, but this distinction was expressly endorsed, and indeed has been mandated, by the Supreme Court. *Id.* at 129 ("[P]etitioner's activities in connection with the preparation and filing of two of the three charging documents—the information and the motion for an arrest warrant—are protected by absolute immunity. . . . The critical question, however, is whether she was acting as a complaining witness rather than a lawyer when she executed the certification under 'penalty of perjury.' ").

V.

The majority also asserts that the social worker's act of swearing to the facts underlying the petition must be absolutely protected because California law requires social work-

ers to file verified petitions. Maj. op. at 7572. This argument, too, was expressly rejected by the Supreme Court. *Kalina*, 522 U.S. at 129-30; *see also Miller*, 335 F.3d at 897 (citing *Antoine*, 508 U.S. at 435-36) ("Even actions taken with court approval or under a court's direction are not in and of themselves entitled to quasi-judicial, absolute immunity.").

In *Kalina*, the Supreme Court found unsatisfactory the prosecutor's assertion that she had executed the certification only because Washington State law required an arrest warrant application to be supported by sworn testimony establishing the grounds for it. 522 U.S. at 129-30. The Court explained that, regardless of Washington's requirement of certification in support of an application, no law required the prosecutor herself to make the certification; rather, "petitioner performed an act that any competent witness might have performed." *Id.* at 129-30.

Similarly, although the majority is correct that California requires that dependency petitions "be verified," maj. op. at 7572 (quoting Cal. Welf. & Inst. Code §§ 523, 332), the majority can cite no statutory or other authority requiring that the social worker make the verification. *See id.*; *Kalina*, 522 U.S. at 130 (finding no absolute immunity "[e]ven if she may have been following a practice that was routinely employed by her colleagues"). This case in particular demonstrates that the social worker cannot be obligated to swear personally to the underlying allegations. This case involves allegations of medical neglect, so the social worker cannot possibly verify personally the truth of the medical opinions upon which she bases the petition: she lacks the personal knowledge and the expertise. The appropriate course of conduct would have been to attach sworn affidavits from medical professionals who were qualified to testify as to their observations. *See* Cal. Welf. & Inst. Code § 332(f) (petition must contain "concise statement of facts, separately stated"). Submitting a petition with such supporting statements would have constituted functioning in a prosecutorial role and presenting evidence, and

such action would have been entitled to absolute immunity. Here, however, the social worker took a shortcut, choosing to draft her version of the factual allegations in support of the petition and to personally swear, under penalty of perjury, to the truth and accuracy of all such allegations. She cannot be absolutely immune for such conduct.

## VI.

The majority also attempts to distinguish *Kalina* on the basis that, unlike prosecutors, social workers are required by California law to conduct investigations. Maj. op. at 7572. First, as the majority acknowledges, maj. op. at 7571, it is the function, not the title, that determines an actor's immunity, and it is not the social worker's investigation function at issue in this case but the function of swearing to facts underlying the petition. Second, the majority's logic implies that social workers receive greater immunity than prosecutors. See maj. op. at 7572-73, 7574-75. This implication defies Supreme Court and Ninth Circuit precedent.

Social workers' functions are granted immunity only to the extent that they are analogous to prosecutorial functions immune at common law. *See, e.g.*, *Miller*, 335 F.3d at 892 ("We must now recognize that beyond those functions historically recognized as absolutely immune at common law, qualified and only qualified immunity exists."); *Safouane v. Fleck*, No. 05-35394, 2007 WL 1031460, *6 (9th Cir. March 30, 2007) (mem.) (citation omitted) ("[I]n *Miller*, we held that [prior Ninth Circuit precedent] had been overruled by subsequent Supreme Court decisions to the extent it granted absolute prosecutorial immunity to social workers for duties beyond which prosecutors were rendered immune at common law."). Social workers did not exist at common law; their immunity derives only from the analogy between their activities and prosecutorial functions. *Meyers*, 812 F.2d at 1157 (first recognizing social workers' immunity based on prosecutorial analogy). Because social workers' immunity today is

derivative of prosecutors' immunity at common law, the former cannot exceed the scope of the latter. *See Antoine*, 508 U.S. at 434 (finding no absolute immunity for court reporters, whose function did not exist at common law, as analogy to judicial function was inapposite). For the majority to expand absolute immunity for social workers by highlighting differences between prosecutors and social workers is to stand the doctrine of absolute immunity on its head.[3]

## VII.

I would not extend absolute immunity to social workers functioning as complaining witnesses. I therefore respectfully dissent from the majority's decision granting absolute immunity for social worker Tjhin.

## VIII.

I do not dissent from the majority's holding that social worker Suarez benefits from absolute immunity, because I believe that ruling conforms with *Kalina*, 522 U.S. at 129

---

[3]The majority relies heavily on *Lebbos*, *see* maj. op. at 7576, but that decision did not address immunity for social workers functioning as complaining witnesses. I admire and empathize with the majority judges on the panel, and I recognize the requirement that we follow Ninth Circuit rulings no matter how wrong those rulings are, *see* concur. op. at 7576, but I simply do not believe that *Lebbos*—which happens to have been decided just a few months after *Miller*—mandates the result reached by the majority.

As an aside, I agree with the reasoning of the concurrence, *see* concur. op. at 7576-77, and believe that *Lebbos* is an aberration inconsistent with all relevant rulings issued before and after. *Compare Lebbos*, 348 F.3d at 823, 825 (absolute immunity for investigation and fabrication of evidence), *with Kalina*, 522 U.S. at 126 (no absolute immunity for investigative function); *Buckley v. Fitzsimmons*, 509 U.S. 259, 272-76 (1993) (no absolute immunity for investigation, nor for fabrication of evidence); *Milstein*, 257 F.3d at 1010, 1011 (same); *see also Miller*, 335 F.3d at 898 (citing with approval cases finding no absolute immunity applied to "investigating whether a removal petition should be filed" nor to "seeking a protective custody order that did not initiate court proceedings.").

("activities in connection with the preparation and filing of . . . the motion for an arrest warrant are protected by absolute immunity") (internal punctuation omitted). However, I cannot agree with the majority's reasoning.

Both the Supreme Court and this court's en banc decision in *Miller* rejected the majority's approach of focusing on a "close[ ] connect[ion] to the judicial process." *Compare* maj. op. at 7575, *with Miller*, 335 F.3d at 897 ("The relation of the action to a judicial proceeding, the test we formulated in *Babcock*, is no longer a relevant standard."). The Supreme Court emphasized that immunity for a particular action depends on analytic comparability to a judicial function, not merely connection to a judicial proceeding. *Compare* maj. op. at 7573, 7574 (relying on "close relationship" between social workers' activities and "prosecution of the case"), *with Kalina*, 522 U.S. at 129, 131 (ruling that prosecutor's act of swearing to certification was not immune, although closely connected to prosecution and although filing was conducted simultaneously with filing of two other charging documents), *and Antoine*, 508 U.S. at 435, 436 (rejecting argument "that absolute immunity be extended to court reporters because they are 'part of the judicial function,' " and explaining, "When judicial immunity is extended to officials other than judges, it is because their judgments are 'functionally comparable' to those of judges . . . .") (punctuation partially omitted and citation omitted).

Additionally, *Miller* abrogated *Coverdell*, 834 F.2d 758, upon which the majority relies. *See* maj. op. at 7574 (citing *Coverdell*, 834 F.2d at 764); *compare Coverdell*, 834 F.2d at 764 (granting immunity for social worker filing custody petition "[b]ecause [her] actions in seeking and obtaining a court order were within the scope of her statutory authority as a quasi-prosecutor"), *and id*. at 765 (granting absolute immunity for execution of court order), *with Miller*, 335 F.3d at 897 ("Official performing the duties of advocate or judge may enjoy absolute immunity for some functions traditionally per-

formed at common law, but that protection does not extend to many of their other functions."), *and id.* (citation omitted) ("Even actions taken with court approval or under a court's direction are not in and of themselves entitled to quasi-judicial, absolute immunity."); *see also Antoine*, 508 U.S. at 436 (declining to extend absolute immunity to court reporters, who conduct activities "required by statute").

As discussed above, *supra* p. 7579-80, in *Miller*, we over-ruled our previous cases that had improperly expanded the scope of absolute immunity for social workers. 335 F.3d at 892 ("Supreme Court decisions have taken an approach that is fundamentally inconsistent with the reasoning of our earlier circuit authority . . . ."). To the extent that the majority relies on *Coverdell*, it relies on overruled jurisprudence.

## IX.

For the above reasons, I respectfully dissent.