**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RENE BOTELLO,
　　　　　*Plaintiff-Appellant,*

　　　　　v.

RICHARD GAMMICK; JOHN HELZER;
WASHOE COUNTY,
　　　　　*Defendants-Appellees.*

No. 03-16618

D.C. No.
CV-03-00195-RLH/
VPC

OPINION

Appeal from the United States District Court
for the District of Nevada
Roger L. Hunt, District Judge, Presiding

Argued and Submitted
March 16, 2005—Berkeley, California

Filed June 23, 2005

Before: John T. Noonan, Jr., Sidney R. Thomas and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge Fisher

7515

## COUNSEL

Diane K. Vaillancourt, Santa Cruz, California, and Terri Keyser-Cooper, Reno, Nevada, for the plaintiff-appellant.

Gregory R. Shannon and Richard A. Gammick, Reno, Nevada, for the defendants-appellees.

## OPINION

FISHER, Circuit Judge:

Appellant Rene Botello alleges that after he brought to light abuses in the Washoe County District Attorney's sexual assault response program, Washoe County District Attorney Richard Gammick and Deputy District Attorney John Helzer (the "prosecutors") retaliated against him for his protected First Amendment activity, in violation of 42 U.S.C. § 1983, defamed him and subjected him to intentional infliction of emotional distress. Botello brought suit in the district court against Gammick, Helzer and Washoe County ("County"). The district court dismissed Botello's first amended complaint on the basis of absolute prosecutorial immunity, and this appeal followed. Because certain of the prosecutors' acts were not within the scope of their prosecutorial functions and were not closely associated with the judicial process, they were not shielded by absolute immunity. In addition, the County was not entitled to absolute immunity. Accordingly, we affirm in part, reverse in part and remand.

## I.  Background

We take the following facts from Botello's first amendment complaint.[1] In December 2001, Botello was employed by the

---

[1]Because the district court granted a Rule 12(b)(6) dismissal, we accept the facts as alleged by Botello.

Washoe County Sheriff's Office ("WCSO") as a child sexual assault investigator. Botello was one of the few Spanish-speaking investigators in the County and was frequently called upon by fellow workers and outside police departments to assist in investigating cases involving Spanish-speaking victims, suspects and witnesses. In the course of his duties, he learned that Nurse Lily Clarkson, who regularly testified as a medical expert in child sexual assault cases, was "indisputably wrong" in her medical finding that a certain female child had been sexually penetrated, had no hymen and was the clear victim of sexual abuse.[2] In addition, Botello learned that Clarkson was equally mistaken in her separate conclusion that the child's sister was similarly injured.

In separate follow-up examinations of the sisters, three pediatricians at three different medical facilities found that there was no physical evidence to support Clarkson's findings that the children had been sexually assaulted. The doctors who performed these follow-up examinations informed Botello that Clarkson's medical findings were in "gross error." Given Botello's awareness that suspects were routinely arrested based on Clarkson's findings and convicted as a result of her testimony, his discovery that her findings were in "gross error" deeply disturbed him.

Botello reluctantly concluded that it would be wrong for him to remain silent and that he needed to bring evidence of Clarkson's wrongful medical findings to the appropriate officials. He brought his discovery to the attention of his superiors, including County prosecutors Gammick and Helzer, who regularly utilized Clarkson's testimony in procuring sexual assault convictions. Botello also requested an audit of the CARES program to ensure the integrity of County sexual assault investigations and prosecutions.

---

[2]Clarkson was one of two nurses employed by the Child Abuse Response and Evaluation program ("CARES"), a state program administered by the Washoe County District Attorney's Office ("DA's Office").

In response to Botello's disclosures, the prosecutors became angry, accused Botello of not being a "team player" and warned him to keep his mouth shut about Clarkson's testimony. Gammick and Helzer threatened to retaliate against Botello should he continue to advocate for oversight of the CARES program. Alarmed by their unexpected response, Botello reported his concerns about the CARES program and his further concerns about a possible cover-up and retaliation by the DA's Office to the Nevada Attorney General's Office and the Federal Bureau of Investigation. Concurrently, Botello resigned his position with the WCSO and applied for employment with the Washoe County School District Police Department ("School Police Department").

Botello experienced immediate retaliation from Gammick and Helzer. Unaware that Botello had already secured his new job with the School Police Department, Gammick and Helzer telephoned his new employer in an effort to dissuade it from hiring Botello. During the telephone conversation, Gammick and Helzer made false allegations about Botello's character and performance at his previous job at WCSO. Failing in their efforts to prevent Botello from being hired, they attempted through follow-up communications to have him fired.

In oral and written communications to the School Police Department, they insisted that Botello must not be permitted to participate in any investigations. Gammick and Helzer emphasized that the DA's Office would refuse to file any case where Botello participated in any phase of the investigation, no matter how preliminary and no matter whether other investigators were available to testify. Because of their threats, Botello's employer assigned him to desk duty.

On June 3, 2003, Botello filed a first amended complaint, alleging violation of his First Amendment rights under 42 U.S.C. § 1983, and defamation and intentional infliction of emotional distress under Nevada law. The defendants moved to dismiss the first amended complaint on the grounds of

absolute immunity. The district court granted defendants' motion to dismiss Botello's § 1983 claim pursuant to Fed. R. Civ. P. 12(b)(6), and dismissed Botello's supplemental state law claims without prejudice pursuant to 28 U.S.C. § 1367.[3]

## II. Analysis

We have jurisdiction under 28 U.S.C. § 1291. A dismissal under Rule 12(b)(6) for failure to state a claim is reviewed de novo. *Milstein v. Cooley*, 257 F.3d 1004, 1007 (9th Cir. 2001). The factual allegations in the complaint are assumed to be true. *Id.* We review a decision by a district court to afford a public official or a municipality absolute or qualified immunity de novo. *Webb v. Sloan*, 330 F.3d 1158, 1163 n.4 (9th Cir. 2003) (municipality); *Herb Hallman Chevrolet v. Nash-Holmes,* 169 F.3d 636, 642 (9th Cir. 1999) (public official).

In this case we are called upon to examine the scope of our decision in *Roe v. City & County of San Francisco*, 109 F.3d 578 (9th Cir. 1997), which held that prosecutors were entitled to absolute immunity for refusing to prosecute any cases referred by a particular officer absent additional corroborating evidence or testimony. The issues before us on appeal are: (1) whether all of Gammick's and Helzer's conduct fell within their decision not to prosecute Botello's cases and whether this fact entitles them to absolute immunity; and (2) whether the County is entitled to absolute immunity.[4] The district

---

[3]In Botello's opening brief he augmented the factual background of the case by detailing what occurred after the district court dismissed his suit: less than one month after the district court dismissed his case, Botello was fired from his job; subsequent to his termination, the School Police Department offered Botello a position as a truancy officer, which pays approximately half the salary of Botello's prior position. The defendants have neither objected to nor disputed Botello's additional factual assertions.

[4]The only issue before the district court on defendants' motion to dismiss was whether the defendants were entitled to absolute immunity.

court found that even assuming the facts alleged in Botello's complaint were true — the prosecutors attempted to dissuade the School Police Department from hiring Botello and insisted that Botello be barred from all investigations in retaliation for Botello's exercise of his First Amendment rights — the prosecutors were entitled to absolute immunity. We disagree. In characterizing all of the prosecutors' alleged behavior as falling within their decision not to prosecute Botello's cases, the district court construed Gammick's and Helzer's conduct too narrowly and read *Roe* too broadly.

## A. Absolute Prosecutorial Immunity

**[1]** Prosecutors are absolutely immune from liability under § 1983 for their conduct insofar as it is "intimately associated" with the judicial phase of the criminal process. *See Burns v. Reed*, 500 U.S. 478, 486 (1991) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)); *Miller v. Gammie*, 335 F.3d 889, 897 (9th Cir. 2003) (en banc) ("[T]o enjoy absolute immunity for a particular action, the official must be performing a duty functionally comparable to one for which officials were rendered immune at common law."). However, when prosecutors perform administrative or investigative functions, only qualified immunity is available. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 271-73 (1993); *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003). That is, the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor. *Buckley*, 509 U.S. at 273.

To determine whether an action is judicial, administrative or investigative, the court looks at "the nature of the function

---

Because absolute immunity acts as a total bar against suit, the district court did not consider whether Botello's speech was protected by the First Amendment. *See, e.g., Milstein*, 257 F.3d at 1007-08 ("To be sure, [absolute] immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty.") (internal quotation marks and citations omitted). We therefore confine our discussion to the nature of the defendants' conduct and not the nature of Botello's speech.

performed, not the identity of the actor who performed it." *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997) (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)). Thus, whether a prosecutor benefits from absolute or qualified immunity depends on which of the prosecutor's actions are challenged. *See Morley v. Walker,* 175 F.3d 756, 759 (9th Cir. 1999). The official seeking absolute immunity bears the burden of demonstrating that absolute immunity is justified for the function in question. *Buckley*, 509 U.S. at 269; *Burns*, 500 U.S. at 486. The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the course of their duties. *Burns*, 500 U.S. at 486-87.

Although the line between the functions is not entirely clear, it is clear that absolute prosecutorial immunity is justified "only for actions that are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing conduct." *Burns*, 500 U.S. at 494. On the one hand, it is well established that a prosecutor has absolute immunity for the decision to prosecute a particular case, *see Burns*, 500 U.S. at 486, and for the decision *not to prosecute* a particular case or group of cases, s*ee Roe,* 109 F.3d at 583. In addition, a prosecutor's professional evaluation of a witness is entitled to absolute immunity "even if that judgment is harsh, unfair or clouded by personal animus." *Id*. at 584.

**[2]** On the other hand, it is also well established that an official is not entitled to absolute immunity for conduct involving termination, demotion and treatment of employees. *See Forrester*, 484 U.S. at 228-30 (holding that a judge is not entitled to absolute immunity in his capacity as an employer and therefore may be liable for unconstitutional conduct involving the termination, demotion and treatment of employees); *Meek v. County of Riverside*, 183 F.3d 962, 967 (9th Cir. 1999) (holding that a judge's decision to fire an employee was an administrative decision not entitled to absolute immunity). The Supreme Court has also held that prosecutors are not entitled to absolute immunity for advising police officers during

the investigative phase of a criminal case, *see Burns*, 500 U.S. at 493, performing acts which are generally considered functions of the police,[5] *see Buckley*, 509 U.S. at 274-76, acting prior to having probable cause to arrest, *see id.* at 274, or making statements to the public concerning criminal proceedings, s*ee id.* at 277-78.

## B.    Functional Analysis

The central issue in determining whether Gammick and Helzer are entitled to absolute immunity is defining the particular function they were engaged in when they allegedly retaliated against Botello. The acts of Gammick and Helzer fit within three separate categories of conduct: (1) their communications to the School Police Department in an effort to dissuade it from hiring Botello; (2) their decision not to prosecute Botello's cases; and (3) their communications to the School Police Department insisting that Botello be barred from all stages of the investigative process.

### 1.    *Telephoning the School Police Department to Dissuade It from Hiring Botello*

[3] Botello claims that before they adopted their nonprosecution policy, the prosecutors first retaliated against him by telephoning the School Police Department trying to sabotage his job prospects. Gammick and Helzer are not entitled to absolute immunity for this conduct, which had no connection to the judicial process. When they involved themselves in the School Police Department's personnel decision whether to

---

[5]Although we focus on the administrative nature of Gammick's and Helzer's conduct, by attempting to dictate the manner in which future investigations should be staffed and conducted, the prosecutors were likely engaging in an investigative rather than a judicial function. *Buckley*, 509 U.S. at 273 ("When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.") (internal quotation marks omitted).

hire Botello, they were at best performing an administrative function and, as such, could only be entitled to qualified immunity. *See Forrester*, 484 U.S. at 228-30. Their defamatory comments about Botello were simply an attempt to disrupt an employment decision. Thus, Gammick and Helzer are not entitled to absolute immunity for their communications with the School Police Department regarding its hiring of Botello.[6]

### 2.   *Decision not to Prosecute*

[4] Having failed to thwart the School Police Department's hiring of Botello, Gammick and Helzer allegedly attempted to have him fired by announcing their refusal to prosecute any cases where Botello participated in any phase of the investigative process. The prosecutors' failure to offer an explanation for their nonprosecution policy and their refusal to prosecute Botello's cases under any circumstances, for instance even where there might be corroborating evidence or testimony, give us pause. Nonetheless, their decision not to prosecute Botello's cases and their communication of that decision is intimately tied to the judicial process and is thus entitled to absolute immunity. *See Roe*, 109 F.3d at 583; *cf. Beck v. Phillips*, 685 N.W. 2d 637 (Iowa 2004) (holding that the prosecutor was entitled to absolute immunity for his nonprosecution policy but only qualified immunity for sending letters communicating the policy to city officials).

### 3.   *Barring Botello from All Stages of the Investigative Process*

[5] The prosecutors' demands that Botello be barred from participating *in any aspect of any investigation* were not intimately tied to the judicial process. Rather, in insisting that Botello be barred from any aspect of the investigative process,

---

[6]We express no opinion as to whether the prosecutors' actions damaged Botello.

even from the earliest stages of preliminary investigations, Gammick and Helzer were in essence dictating to local law enforcement authorities how future criminal investigations should be conducted and staffed — an administrative function.

**[6]** Although Gammick and Helzer argue that their staffing directives fall within *Roe*'s protection, such a reading of *Roe* would extend absolute immunity to conduct well beyond the prosecutorial function. *See Burns*, 500 U.S. at 495 ("Almost any action by a prosecutor . . . could be said to be in some way related to the ultimate decision whether to prosecute, but we have never indicated that absolute immunity is that expansive. Rather, . . . we inquire whether the prosecutor's actions are closely associated with the judicial process."). Because the official seeking absolute immunity bears the burden of demonstrating that absolute immunity is justified for the function in question, *see Buckley*, 509 U.S. at 269, it was the prosecutors' burden to demonstrate that their conduct was tied to an exercise of their prosecutorial judgment. Here, they failed to demonstrate a connection between their unexplained, unqualified blanket prohibition on Botello's involvement in any aspect of an investigation and the judicial process. Under Gammick's and Helzer's nonprosecution policy, it made no difference whether Botello was a potential witness, or whether his testimony could be corroborated by other witnesses or physical evidence. *Cf. Roe*, 109 F.3d at 584 (noting that prosecutors would not prosecute Roe's cases absent corroborating evidence or testimony).

Instead, Gammick and Helzer sought to usurp the staffing decisions Chief Meiras might make to use Botello in ways that would not compromise a criminal prosecution and would comport with the prosecutors' nonprosecution policy. In *Roe*, the police chief had a number of staffing choices in light of the prosecutors' qualified nonprosecution policy, including transferring Roe as the chief did, or making sure that there would always be an officer other than Roe who could testify

or corroborate Roe's testimony. Gammick and Helzer gave Chief Meiras no such options. We fail to see why Gammick and Helzer should be entitled to absolute immunity when they stepped into the shoes of Chief Meiras, who would at most be entitled to only qualified immunity as an administrative decision-maker. *See Burns*, 500 U.S. at 486-87 (explaining that qualified rather than absolute immunity is presumed sufficient to protect government officials in the course of their duties).

**[7]** Just as a prosecutor may not assert that his actions are absolutely immune merely because they are performed by a prosecutor, *see Buckley*, 509 U.S. at 273, a prosecutor may not assert blanket absolute immunity by labeling all his actions as within a particular prosecutorial function. By simply characterizing all of their conduct as a decision not to prosecute, Gammick and Helzer have not met their burden of showing that absolute immunity is justified either for their attempted interference with the School Police Department's hiring of Botello or for their administrative demands that Botello be barred from participating in all stages of the investigative process. Accordingly, we reverse and remand to the district court to determine whether Gammick and Helzer are entitled to qualified immunity. *See, e.g.*, *Milstein*, 257 F.3d at 1013 n.6.

## C. County Liability

**[8]** After finding that Gammick and Helzer were entitled to absolute immunity, the district court dismissed all the defendants, including the County. Generally, a municipality may not be held liable under § 1983 for the torts of its employees. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978); *Bd. of County Comm'rs v. Brown,* 520 U.S. 397, 403 (1997). The actions of individual employees can support liability against their governmental employer only if the employees were acting pursuant to an official policy, *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479 (1986), or committed a consti-

tutional violation "pursuant to a longstanding practice or custom . . . ." *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003). However, liability may also attach "even for an isolated constitutional violation . . . when the person causing the violation has final policymaking authority." *Id.* Final policymaking authority may be granted by a state legislature or by officials who possess that authority. *Pembaur,* 475 U.S. at 483.

The parties seem to agree that Gammick, the County District Attorney, has final policymaking authority. They disagree, however, about whether the district attorney is a policymaker for the state or the County. We determine whether an officer is a state or a county official by looking to state law to determine whether the particular acts the official is alleged to have committed fall within the range of the official's state or county functions. *Weiner v. San Diego County*, 210 F.3d 1025, 1028-29 (9th Cir. 2000) (discussing *McMillian v. Monroe County,* 520 U.S. 781, 785-86 (1997)).

Botello argues that Gammick, as district attorney, was a Washoe County employee and policymaker when he acted "outside the scope of active criminal prosecutions and outside the scope of prosecutorial discretion" and "specifically adopted a policy of retaliation against plaintiff for his speech and ratified all acts of Helzer." In contrast, the County claims that under Nevada law, when Gammick made the decision not to prosecute cases initiated by Botello, he was acting as a policymaker on behalf of the state and not the County.

**[9]** The County's argument is unavailing in two respects. First, it is foreclosed by our holding in *Webb v. Sloan* that, under Nevada law, "principal district attorneys are final policymakers for the municipality with respect to the conduct of criminal prosecutions." *Webb*, 330 F.3d at 1165. Accordingly, Gammick was a policymaker for the County when he decided not to prosecute Botello's cases.

**[10]** Second, Botello alleges that other than adopting the nonprosecution policy, Gammick's conduct was administrative, not judicial, in nature. The County offers no argument to rebut the proposition that a district attorney acting in his administrative and investigative capacity is a County policymaker. Instead, the County argues that all of Gammick's conduct in relation to Botello can be characterized as falling within the district attorney's prosecutorial function. As discussed above, we reject this argument. Other than the decision not to prosecute Botello's cases, Gammick's other conduct as a County policymaker — telephoning the School Police Department to dissuade it from hiring Botello and insisting that he be barred from all stages of the investigative process — were not closely related to the judicial process. *Cf. Weiner*, 210 F.3d at 1030-31 (holding that under California law a district attorney acts as a county officer for some administrative purposes and a state officer when deciding whether to prosecute an individual). Because Gammick was acting as a policymaker for the County when he performed the administrative acts outside the scope of absolute immunity, we reverse the district court's dismissal of Botello's claims against the County.

## III. Conclusion

For the foregoing reasons, the district court's dismissal is AFFIRMED as to Gammick's and Helzer's decision not to prosecute Botello's cases. The district court's dismissal is REVERSED and the case is REMANDED as to Gammick's and Helzer's communications to the School Police Department in an effort to dissuade it from hiring Botello, their communications demanding that Botello be barred from any stage of the investigative process and the County's liability. Costs on appeal are awarded to appellant Botello.