NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 37

No. 2017-201

| | |
|---|---|
| Adam Hubacz | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Washington Unit, |
| | Civil Division |
| | |
| The Village of Waterbury | October Term, 2017 |

Mary Miles Teachout, J.

Daniel A. Seff of Murphy Sullivan Kronk, Burlington, for Petitioner-Appellee.

John T. Leddy and Kevin J. Coyle of McNeil, Leddy & Sheahan, Burlington, for
  Respondent-Appellant.

Susan Edwards of Law Offices of Susan Edwards, Wells, for Amicus Curiae New England
  Police Benevolent Association.


PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.


¶ 1.    **CARROLL, J.**  The Village of Waterbury (the Village) seeks interlocutory review of the trial court's order granting Adam Hubacz's Vermont Rule of Civil Procedure 75 petition to overturn the Village's decision terminating his employment as a police officer. The superior court certified the following question to this Court: Is a State's Attorney's unilateral decision to refuse to prosecute any cases investigated by a particular municipal police officer, alone, a sufficient basis for termination of the officer pursuant to 24 V.S.A. § 1931? We answer this question generally in the affirmative, but with the limitations explained below. Accordingly, we remand for proceedings consistent with this opinion.

¶ 2. The parties to this dispute have been embroiled in litigation in both state and federal court since the Village placed petitioner Hubacz on administrative leave in 2012.[1] While employed as a police officer by the Village, petitioner applied for a law enforcement position in another town. He participated in a prepolygraph examination interview, which was a required condition of the application process. During the interview, petitioner admitted to several acts, including cheating on a police exam, insurance fraud, taking uniforms from a prior employer, failure to report income on his tax returns, and impersonating a police officer for discounts and to intimidate high school classmates. Following these admissions, the police officer who conducted the interview cancelled the actual polygraph examination and sent a report of the prepolygraph examination to the Village police chief who subsequently delivered a copy to the Washington County State's Attorney. Deciding that petitioner's conduct effectively undermined his credibility and qualifications as a police officer, the State's Attorney elected to no longer prosecute any cases involving petitioner, whose duties included developing cases for prosecution and testifying in court.[2] The State's Attorney notified the Village of his decision.

¶ 3. In January 2012, the Village placed petitioner on administrative leave and instituted proceedings to terminate his employment pursuant to 24 V.S.A. § 1932(a), which allows for the suspension or termination of a police officer for negligence, dereliction of duty, or conduct unbecoming an officer. The Village notified petitioner that the decision to terminate his employment was based upon the State's Attorney's refusal to continue to prosecute cases in which petitioner was involved. The Village scheduled a hearing before the Village's Trustees and

[1] The "lengthy and complicated procedural history" of this litigation is outlined in Hubacz v. Village of Waterbury, No. 2015-032, 2015 WL 3767123, at *1 (Vt. June 12, 2015) (unpub. mem.), https://www.vermontjudiciary.org/sites/default/files/documents/eo15-032.pdf [https://perma.cc/D7VM-8WWJ]. Not all claims made in these cases are relevant here.

[2] The State's Attorney later distributed a redacted version of the report to defendants and defense attorneys in open cases involving petitioner, notifying them of the potentially exculpatory information. This redacted report has reportedly also been disseminated to the press and public.

provided petitioner the required statutory notice. The hearing was held on January 24, 2012, and by stipulation of the parties, the sole basis for the request for termination was the State's Attorney's decision to cease prosecuting petitioner's cases. The Trustees took testimony at the hearing, but no other reasons for the termination were offered at the hearing.

¶ 4. In a written decision, the Trustees terminated petitioner's employment, pursuant to 24 V.S.A. § 1932(a), citing the decision by the Washington County State's Attorney not to prosecute any cases from or involving petitioner and petitioner's resulting inability to participate in most, if not all, of his law enforcement duties. The Trustees also concluded that petitioner's inability to contribute to the prosecution of cases rendered him negligent and derelict in his duties and would result in a misuse of taxpayer funds. Finally, the Trustees reasoned that petitioner had committed conduct unbecoming an officer because his behavior was likely to have an impact on the public's respect for police officers and confidence in the police department as a whole.

¶ 5. Petitioner filed suit in federal court, raising a due process claim and seeking a reversal of the termination decision. The federal court treated the claim as an appeal under V.R.C.P. 75, which provides for superior court review of administrative actions. Hubacz v. Vill. of Waterbury, No. 2:12-cv-39, 2014 WL 1493981, at *1 (D. Vt. Apr. 15, 2014). The court noted that the Trustees made no independent findings regarding the conduct described in petitioner's prepolygraph interview, instead, as explained above, their ruling was based entirely and exclusively upon the State's Attorney's decision not to prosecute petitioner's cases and that decision's impact on petitioner's ability to perform the duties of a Village police officer. For this reason, the court determined that the Trustees' factual findings did not support the termination decision and remanded the matter to the Trustees for consideration of facts that might support termination under § 1932(a). Id. at *8; see Turnley v. Town of Vernon, 2013 VT 42, ¶ 11, 194 Vt. 42, 71 A.3d 1246 (explaining V.R.C.P. 75 review "is confined to questions of law and encompasses the consideration of evidentiary points only insofar as they may be examined to

determine whether there is any competent evidence to justify the adjudication" (quotation omitted)); Garbitelli v. Town of Brookfield, 2011 VT 122, ¶ 6, 191 Vt. 76, 38 A.3d 1133 ("[R]eview [under V.R.C.P. 75] is normally limited to answering legal questions raised by the factual record developed in the administrative proceeding."); In re D'Antonio, 2007 VT 100, ¶ 8, 182 Vt. 599, 939 A.2d 493 (mem.) (construing V.R.C.P. 75 to permit remand where court determines administrative body's factual findings insufficient to support legal conclusions).

¶ 6. The federal court also suggested that the Trustees consider whether § 1932 provided the sole basis for termination of a police officer, and noted that 24 V.S.A. § 1931, as applied by this Court in Gadue v. Village of Essex Junction, 133 Vt. 282, 336 A.2d 182 (1975), might provide an alternate, independent basis for termination. The court stated that "[a]s the Village properly notes, Hubacz essentially suffers from a legal disability insofar as he is unable to effectively perform the functions of his job." Hubacz, 2014 WL 1493981, at *8. The court offered that petitioner's "legal disability" might be analogous to the physical disability we held supported termination for cause pursuant to § 1931 in Gadue, 133 Vt. at 283, 336 A.2d at 183.

¶ 7. The Trustees conducted three days of hearings on remand, which included witness testimony regarding petitioner's termination. Regarding termination under § 1932, the Trustees found that petitioner could not develop cases for prosecution or testify in court because of the State's Attorney's decision and, thus, petitioner could not perform the duties required by his position as a police officer: "Consequently, [petitioner] has become negligent and derelict in his official duties as a police officer when he cannot testify in court or otherwise be involved in the prosecution of cases." The Trustees further concluded that the actions described in petitioner's prepolygraph interview permitted the conclusion that the State's Attorney's decision was based on conduct unbecoming an officer, which the Trustees understood to include conduct that eroded public confidence in law enforcement. The Trustees' decision did not examine the truth of the admissions in petitioner's prepolygraph interview, instead concluding that "[i]n short, we find that

4

the most important fact here is that [petitioner] made these admissions in the first place and did substantial damage to his reputation and credibility that resulted in the State['s] Attorney's ultimate decision not to prosecute his cases."

¶ 8. Regarding termination under § 1931, the Trustees concluded that the State's Attorney's nonprosecution decision constituted "a legal and functional disability in that [petitioner] is unable to perform the requisite duties of a police officer." The Trustees emphasized the small size of the Village police force and the necessity that each officer be able to investigate suspected criminal activity, conduct arrests and process suspects, and participate in prosecutions. As suggested by the federal court decision, the Trustees analogized petitioner's situation to Gadue:

> As with the police officer in Gadue, [petitioner's] disability—though not a physical impairment—effectively renders him unable to perform his job in the Village of Waterbury Police Department.
>
> As in Gadue, we find that this legal disability compromises the public interest in having fully functioning police officers capable of investigating, processing, and developing an investigation or arrest. It would undermine the Village's public safety to employ an officer [who] could not perform or participate in arrests or whose arrests could not be prosecuted. We also find that the residents of Waterbury Village are harmed when their tax dollars contribute to the salary of a police officer who cannot perform any requisite official duties for the Village.
>
> We find that [petitioner's] legal and functional disability is equivalent to the physical or mental disability discussed by the Vermont Supreme Court in Gadue. The effect on the police departments and the public is the same. [Petitioner] was and remains functionally unable to perform an essential portion of his tasks as a police officer. As such, we find cause for dismissal under 24 V.S.A. § 1931.

Accordingly, the Trustees concluded that petitioner could be terminated pursuant to either § 1931 or § 1932 and affirmed petitioner's 2012 dismissal from the Village police force.

¶ 9. Petitioner appealed the Trustees' decision to the superior court pursuant to V.R.C.P. 75, and the parties filed cross motions for summary judgment. The superior court interpreted the Trustees' decision affirming petitioner's termination under § 1932, like the initial termination

5

decision, to rely on the State's Attorney's nonprosecution decision rather than any independent findings that petitioner's conduct demonstrated negligence, dereliction of duty, or conduct unbecoming an officer as instructed by the federal court. Consequently, the court concluded that the Trustees' § 1932 decision lacked any proper factual basis. The court likewise concluded that § 1931 did not support petitioner's termination. In reaching this conclusion, the court read Gadue to apply only when characteristics of an officer make that officer unable to perform his duties. In other words, the discretionary decision of a third party could not serve as the basis for a termination for cause under § 1931. According to the court's reasoning, that section and Gadue apply only when a quality personal to the officer in question prevents the officer from fulfilling his official duties. The court concluded that, because the Trustees' § 1931 decision was based solely on the State's Attorney's choice not to prosecute petitioner's cases, the Trustees' decision under this section also could not stand, and petitioner was wrongfully terminated.

¶ 10. The Village subsequently sought interlocutory review related to the court's interpretation of § 1931 and Gadue, which was granted.[3] The superior court certified the following question: Is a State's Attorney's unilateral decision to refuse to prosecute any cases investigated

---

[3] The superior court may permit interlocutory appeal of an order or ruling upon motion of a party in a civil action when "the order or ruling involves a controlling question of law about which there exists substantial ground for difference of opinion; and . . . an immediate appeal may materially advance the termination of the litigation." V.R.A.P. 5(b)(1). This Court's consideration of a question certified for interlocutory review addresses only questions of law. See In re Pyramid Co. of Burlington, 141 Vt. 294, 304, 449 A.2d 915, 920 (1982) ("A question of law is one capable of accurate resolution by an appellate court without the benefit of a factual record. If factual distinctions could control the legal result, the issue is not an appropriate subject for interlocutory appeal.").

The Village asks us to review the question presented in this case according to our standard of review under V.R.C.P. 75. See Turnley, 2013 VT 42, ¶ 11 (explaining review under V.R.C.P. 75 "is confined to questions of law and encompasses the consideration of evidentiary points only insofar as they may be examined to determine whether there is any competent evidence to justify the adjudication" (quotation omitted)). We decline to do so. We likewise decline to consider the Village's arguments related to the trial court's decision regarding petitioner's termination under § 1932. The trial court's decision on that issue is not on appeal. Our analysis is limited to the question certified by the trial court for this Court's consideration.

by a particular municipal officer, alone, a sufficient basis for termination of the officer pursuant to 24 V.S.A. § 1931?

¶ 11.   Our resolution of this question turns, as an initial matter, on consideration of whether 24 V.S.A. § 1931(a) provides a stand-alone means for the termination of a police officer's employment.  In relevant part, § 1931(a) states that a police officer "shall hold office during good behavior, unless sooner removed for cause."  According to 24 V.S.A. § 1932(a), an officer may be removed according to statutory notice and hearing procedures, "[w]henever it appears to the appointing authority by its own knowledge or when informed by a written petition signed by one or more responsible persons that any regular officer has become negligent or derelict in the officer's official duty, or is guilty of conduct unbecoming an officer."  Gadue supports the conclusion that a police officer's employment may be terminated under § 1931(a) alone, without the showing of negligence, dereliction of duty, or conduct unbecoming an officer required by § 1932(a).

¶ 12.   In Gadue, the Village of Essex Junction required an officer to undergo physical examination following surgery for heart disease.  The Village's doctor concluded that the officer's medical condition precluded a return to his official duties, and the Village police force terminated the officer's employment.  The precise question before the Court was whether § 1931(a)'s reference to removal for "cause" could be interpreted to include an officer's physical disability.  Gadue, 133 Vt. at 283, 336 A.2d at 183.  We upheld the officer's termination, reasoning that "[t]he discharge of public employees physically or mentally unable to perform the duties of their offices ha[d] been upheld in numerous decisions" from other state courts.  Id.  We concluded "[t]he detriment to the public which would result from the lack of authority to discharge a physically disabled policeman is itself a sound basis for concluding that physical disability may be 'cause' for dismissal."  Id. at 284, 336 A.2d at 183.

¶ 13. Gadue did not address the interplay of §§ 1931 and 1932. Petitioner argues that our decision in Turnley effectively overruled Gadue and supports reading § 1932(a) to predicate an officer's termination on only the grounds specified in that statute. We disagree. The officer in Turnley was terminated for conduct unbecoming an officer—one of the grounds specified in § 1932(a). We wrote that "[w]e have had only limited occasion to consider the type of misconduct that constitutes conduct unbecoming an officer such that a municipal body may fire a police official for cause in harmony with 24 V.S.A. §§ 1931(a) and 1932(a)." Turnley, 2013 VT 42, ¶ 16. Petitioner argues this statement implies that § 1931(a)'s reference to "cause" references only the grounds for termination listed in § 1932(a) such that the sole grounds for termination are those in the latter section. We do not read Turnley to require this conclusion. In Turnley we were asked to consider "the type of conduct that would qualify as conduct unbecoming an officer and thereby justify dismissal for cause." 2013 VT 42, ¶ 18. Thus, the decision assumes, in accord with the statutory scheme, that conduct unbecoming an officer is cause for the officer's dismissal—but the inverse is not implied. That is, while the grounds for termination listed in § 1932(a) may satisfy a cause standard, this does not preclude termination for cause pursuant to § 1931(a) based upon factors not delineated in § 1932(a).

¶ 14. Gadue controls on this narrow question, and thus an officer may be terminated for cause in accord with 24 V.S.A. § 1931(a) without a showing that the officer has been negligent, derelict in his duties, or committed any conduct unbecoming an officer as required for termination pursuant to 24 V.S.A. § 1932(a).

¶ 15. Turning to the broader question presented in this case, we find Gadue instructive concerning when an officer may be terminated for cause under § 1931(a), though with one caveat. The parties seem to read Gadue to require some form of disability as a premise for § 1931(a) termination for cause. Thus, the Village characterizes the State's Attorney's nonprosecution decision as a "legal disability" and argues that because petitioner suffers from a "legal disability"

8

that prevents him from fulfilling his official duties, he may be terminated for cause. In as much as Gadue may be read to require some form of disability as predicate for § 1931(a) termination for cause, we overrule that aspect of the decision. As explained below, the fundamental reasoning of Gadue does not turn on whether the officer to be terminated has a physical, mental, or legal disability. Use of this terminology may force, as it arguably has in this case, attenuated reasoning unnecessary to the central legal issues in play. We therefore abandon Gadue's suggestion that some form of disability is necessary to show that an officer cannot fulfill his official duties such that he or she may be terminated for cause under § 1931(a).

¶ 16. That said, Gadue's fundamental reasoning is still controlling. In its simplest form, this decision stands for the idea that a police department or its governing body may terminate an officer for cause when the officer is unable to fulfill his or her official duties. While the officer in Gadue's inability to perform the duties of his office was attributable to physical causes, the decision's reasoning was not linked to the cause of the officer's inability to fulfill his duties but to the fact that he could not fulfill them. The central proposition of Gadue is equally applicable regardless of the underlying facts—an officer may be dismissed for cause when the officer is unable to perform the duties of his or her employment. See 133 Vt. at 283, 336 A.2d at 183 ("The discharge of public employees physically or mentally unable to perform the duties of their offices has been upheld in numerous decisions." (emphasis added)). As we explained in Gadue, a contrary position "would constitute an unreasonable result which we will not presume that the Legislature intended." Id. at 284, 336 A.2d at 183.

¶ 17. Gadue's reasoning answers the certified question in this case—an officer may be terminated for cause pursuant to § 1931(a) when the State's Attorney unilaterally decides not to prosecute the officer's cases if, as a result of that nonprosecution decision, the officer is unable to perform the duties of his employment. Our answer to this question implicitly incorporates two limits on this decision's application.

¶ 18.    First, a nonprosecution decision may only serve as the basis for termination for cause where the police department involved cannot reasonably accommodate the effect of the prosecutor's decision, whether by assigning the officer to alternate duties, ensuring that the officer's arrests are witnessed, or by some other means.  Not all nonprosecution decisions need result in termination.  Prosecutorial discretion does not give a prosecutor free rein over the employment or termination of law enforcement agency personnel.  In Botello v. Gammick, in the context of considering whether absolute or qualified immunity applied regarding two prosecutors attempts to influence the hiring of a police officer via a nonprosecution decision, the Ninth Circuit explained that:

> Under [the prosecutors'] nonprosecution policy, it made no difference whether [the officer] was a potential witness, or whether his testimony could be corroborated by other witnesses or physical evidence.
>
> Instead, [the prosecutors] sought to usurp the staffing decisions [the police chief] might make to use [the officer] in ways that would not compromise a criminal prosecution and would comport with the prosecutors' nonprosecution policy.  In Roe, the police chief had a number of staffing choices in light of the prosecutors' qualified nonprosecution policy, including transferring [the officer] as the chief did, or making sure that there would always be an officer other than [the officer in question] who could testify or corroborate [the officer's] testimony.  [The prosecutors in this case] gave [the police chief] no such options.

Botello, 413 F.3d 971, 978 (9th Cir. 2005) (citation omitted) (contrasting facts in Botello with Roe v. City & Cty. of San Francisco, 109 F.3d 578 (9th Cir. 1997)).  While Botello addresses a different legal question, the Ninth Circuit's reasoning suggests that, in general, a prosecutor's unilateral decision not to prosecute a particular officer's cases should not in all cases mandate termination of the officer's employment.

¶ 19.    This conclusion does not arise exclusively from other states' caselaw, it is also consistent with Vermont's statutory scheme governing the hiring and termination of police officers.  Specifically, under 24 V.S.A. § 1931(a) a town legislative body or manager is granted

the authority to appoint police officers and a police chief. As explained above, the officers and chief hold office unless removed for cause. And pursuant to 24 V.S.A. § 1932(a), "the appointing authority" is empowered to remove officers in accordance with the notice and hearing procedures in that statute. Thus, the hiring and termination of police officers is within the authority of a town's legislative body or manager—this power is not ceded to a State's Attorney even if the State's Attorney decides not to prosecute a particular officer's cases. Accordingly, the administrative body considering the termination of an officer for cause based on the officer's inability to perform his or her official duties must find that no reasonable accommodation of the officer's restrictions is possible within the police department such that the officer can continue to be employed by the department.

¶ 20. Our decision here is limited in a second way, namely, a State's Attorney's decision not to prosecute a particular police officer's cases must be premised on valid grounds. The Village argues that in this case the State's Attorney's nonprosecution decision was required by the U.S. Supreme Court's decision in Brady v. Maryland, 373 U.S. 83 (1963), and associated cases. Thus, we address the Brady rule as grounds for a nonprosecution decision.

¶ 21. Brady announces a straightforward rule: "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87. This rule applies to both exculpatory and impeachment evidence. United States v. Bagley, 473 U.S. 667, 676 (1985). Due process is not violated, nor a new trial required, however, "whenever a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict." Giglio v. United States, 405 U.S. 150, 154 (1972). The critical inquiry is whether the evidence not disclosed is material—"[a] finding of materiality of the evidence is required under Brady." Id. The "touchstone of materiality" is whether " 'there is a reasonable probability that, had the evidence been disclosed to the defense,

the result of the proceeding would have been different.' " Kyles v. Whitley, 514 U.S. 419, 433-34 (1995) (quoting Bagley, 473 U.S. at 682). As the Court has explained, "the adjective is important"—a Brady violation follows from the nondisclosure of evidence raising a "reasonable" probability of a different verdict "by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Id. at 434-35.

¶ 22. The Court has not gone so far as to require prosecutors to allow unfettered access to their files in order to satisfy Brady's disclosure requirements. United States v. Agurs, 427 U.S. 97, 108 (1976). But the Court has held that "[b]ecause we are dealing with an inevitably imprecise standard, and because the significance of an item of evidence can seldom be predicted accurately until the entire record is complete, the prudent prosecutor will resolve doubtful questions in favor of disclosure." Id. This directive is consistent with a prosecutor's special role, as "disclosure will serve to justify trust in the prosecutor as 'the representative of a sovereignty whose interest in a criminal prosecution is not that it shall win a case, but that justice shall be done.' " Kyles, 514 U.S. at 439 (quoting Berger v. United States, 295 U.S. 78, 88 (1935) (alterations omitted)). Just as importantly, disclosure will "tend to preserve the criminal trial, as distinct from the prosecutor's private deliberations, as the chosen forum for ascertaining the truth about criminal accusations." Id. at 440.

¶ 23. Brady's duty to disclose includes the disclosure of evidence that may be used to impeach a police officer's credibility. See, e.g., United States v. Howell, 231 F.3d 615, 624-27 (9th Cir. 2000) (holding mistakes in police reports should have been disclosed but failure to disclose was not prejudicial under Brady); United States v. Pelullo, 105 F.3d 117, 122-23 (3d Cir. 1997) (remanding for new trial because Brady required disclosure of inconsistencies in federal agents' reports and testimony and undisclosed evidence was material). Decisions from several jurisdictions support the conclusion that a prosecutor may base a nonprosecution decision on the

12

prosecutor's conclusion that <u>Brady</u> requires the disclosure of impeachment evidence concerning a police officer. See, e.g., <u>Dobbertin v. Town of Patagonia</u>, No. CV 12-744-TUC-CRP, 2014 WL 1410440, at *2 (D. Ariz. Apr. 11, 2014) (considering terminated officer's claims where "County Attorney's Office would no longer work with" police chief or his department); <u>Nazir v. City of Torrance</u>, No. LA CV 12-03310 JAK (AGRx), 2012 WL 3562534, at *1 (C.D. Cal. Aug. 17, 2012) (explaining District Attorney's Office placed officer on its <u>Brady</u> Alert System and notified police department it would not prosecute officer's cases after officer left information out of probable cause declaration). Consideration of the evidence in a charged offense, including estimations of witness credibility, is within a prosecutor's discretion. Cf. <u>Roe</u>, 109 F.3d at 584 ("Just as a prosecutor's professional evaluation of the evidence assembled by the police is entitled to absolute immunity, a prosecutor's professional evaluation of a witness is entitled to absolute immunity even if that judgment is harsh, unfair or clouded by personal animus . . . ." (citation omitted)). And, as discussed above, "a prosecutor anxious about tacking too close to the wind will disclose a favorable piece of evidence." <u>Kyles</u>, 514 U.S. at 439. Given these two factors, a prosecutor's determination that <u>Brady</u> requires the disclosure of damaging impeachment evidence regarding a particular officer can provide valid grounds for the prosecutor's nonprosecution decision.

¶ 24.    Whether that nonprosecution decision may provide cause for termination under 24 V.S.A. § 1931(a) in a given case is a separate consideration. As explained above, that consideration requires a finding that the officer in question cannot fulfill the duties associated with his employment and cannot be reassigned in such a way as to accommodate the nonprosecution decision.

<u>Remanded for proceedings consistent with this opinion</u>.

FOR THE COURT:

_____
Associate Justice

13